IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
Gainesville Division

MARTA VALENTINA RIVERA MADERA, on behalf of herself and all others similarly situated; FAITH IN FLORIDA, HISPANIC FEDERATION, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, and VAMOS4PR,

    Plaintiffs,

vs.

KEN DETZNER, in his official capacity as Secretary of State for the State of Florida; and KIM A. BARTON, in her official capacity as Alachua County Supervisor of Elections, on behalf of herself and similarly-situated County Supervisors of Elections,

    Defendants.
_____/

Case No.: 1:18-cv-00152

**AMICUS CURIAE BRIEF OF THE FLORIDA STATE ASSOCIATION OF SUPERVISORS OF ELECTIONS, INC.**

    Pursuant to the Court's Order dated August 24, 2018, the Florida State Association of Supervisors of Elections, Inc. ("FSASE"), submits this amicus curiae brief to assist the Court in its consideration of the Plaintiffs' motion for preliminary injunction. In summary, the FSASE respectfully suggests that the Court should deny Plaintiffs' request for preliminary injunctive relief because

1

Plaintiffs failed to demonstrate that such relief is in the public interest. At this late date in the election process, the relief requested by the Plaintiffs is impossible to provide in many, if not all, of the counties involved in this case. Mandating the relief requested by Plaintiffs would severely disrupt the orderly conduct of the November 6, 2018 General Election (the "General Election").

Background

The FSASE is comprised of 66 Supervisors of Elections ("Supervisors"), 32 of whom have been identified as putative class defendants in this proceeding. The Supervisors are elected county constitutional officers pursuant to Article VIII, Section 1(d) of the Florida Constitution. The Florida Election Code (Chapters 97-106, Florida Statutes) charges them with the responsibility of conducting elections in each of their respective counties. See § 99.015, Fla. Stat. Each Supervisor operates independently of other Supervisors and each Supervisor implements the Florida Election Code in accordance with the circumstances of the Supervisor's respective county, taking into consideration budgetary constraints, local demographics, and population characteristics. Declaration of Gill, Supervisor of Citrus County at 16.

Each Supervisor is committed to insuring that: (a) any person who is legally eligible to vote may register to vote and may cast an informed and educated ballot; (b) elections in Florida are conducted in a secure and orderly fashion; (c) the

results of such elections are fair and accurate; and (d) the public has confidence in the election process.  See id. at 14; Declaration of Lenhart, Supervisor of Flagler County at 9; Declaration of Stephens, Supervisor of Jackson County at 8.

Plaintiffs seek a preliminary injunction pursuant to Section 4(e) of the Federal Voting Rights Act of 1965, 52 U.S.C § 10303(e) ("Section 4(e)") requiring the Florida Secretary of State (the "Secretary") and 32 county Supervisors to make Spanish-language ballots and other elections materials, as well as bilingual, Spanish-speaking election officials, available for the General Election.  Section 4(e) provides:

> **(e) Completion of requisite grade level of education in American-flag Schools in which the predominant classroom language was other than English**
>
> (1) Congress hereby declares that to secure the rights under the fourteenth amendment of persons educated in American-flag schools in which the predominant classroom language was other than English, it is necessary to prohibit the States from conditioning the right to vote of such persons on ability to read, write, understand, or interpret any matter in the English language.
>
> (2) No person who demonstrates that he has successfully completed the sixth primary grade in a public school in, or a private school accredited by, any State or territory, the District of Columbia, or the Commonwealth of Puerto Rico in which the predominant classroom language was other than English, shall be denied the right to vote in any Federal, State, or local election because of his inability to read, write, understand, or interpret any matter in the English language, except that in States in which State law provides that a different level of education is presumptive of literacy, he shall demonstrate that

> he has successfully completed an equivalent level of education in a public school in, or a private school accredited by, any State or territory, the District of Columbia, or the Commonwealth of Puerto Rico in which the predominant classroom language was other than English.

As a threshold matter, the FSASE does not concede Plaintiffs' assertion that Section 4(e) is applicable to each of the 32 putative class defendants.[1]  In addition, the FSASE does not concede that the relief requested by Plaintiffs is appropriate relief under Section 4(e).[2]  However, this amicus brief is not directed to the merits of Plaintiffs' claims under Section 4(e).  Instead, this amicus brief focuses on whether, given the existing time constraints, granting the relief requested by Plaintiffs for the General Election, is in the public interest.

---

[1] The FSASE notes that Section 4(e) is focused on providing relief for voters educated in Puerto Rico in classrooms in which the predominant language was Spanish.  However, in their motion for preliminary injunction and supporting declarations, Plaintiffs appear to conflate Spanish-speaking Puerto Rican voters with all Spanish-speaking voters.  The FSASE does not believe that this is appropriate.

[2] Under Section 203 of the Voting Rights Act of 1965, a political subdivision is required to provide language assistance to all voters if more than five percent, or greater than 10 percent of the voting age citizens, do not speak or understand English adequately to participate in the electoral process.  Thirteen counties in Florida are currently covered under Section 203 for Spanish-speaking voters. None of these 13 counties is involved in this case.  The relief sought by Plaintiffs in this proceeding is consistent with the requirements applicable to counties covered by Section 203.  The FSASE believes that Plaintiffs are improperly attempting to turn the 32 putative defendant counties into de facto Section 203 counties.  If any relief is appropriate under Section 4(e), such relief must be specifically tailored to the circumstances of the individual counties.

The Legal Standard for a Preliminary Injunction

A preliminary injunction is "an extraordinary remedy never awarded as a right."  Benisek v. Lamone, 138 S.Ct. 1942, 1943 (2018) (quoting Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24, 129 S.Ct. 365, 17 L.Ed.2d 249 (2008)).  To be entitled to issuance of a preliminary injunction, a plaintiff must "plainly establish" four elements:

> (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a showing that plaintiff will suffer irreparable injury if an injunction does not issue, (3) proof that the threatened injury to plaintiff outweighs any harm that might result to the defendants, and (4) a showing that the public interest will not be disserved by the grant of a preliminary injunction.

Northeastern Fl. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville, 896 F.2d 1283, 1285 (11th Cir. 1990) (citing Cunningham v. Adams, 808 F.2d 815, 819 (11th Cir. 1987); Johnson v. United States Dep't of Agric., 734 F.2d 774, 781 (11th Cir. 1984)).  With regard to the fourth element of the test for a preliminary injunction, it is well-settled that the public has an interest in the conduct of "orderly elections."  See Benisek, 138 S.Ct. at 1944; see also Eu v. San Francisco Cnty. Democratic Cent. Comm., 489 U.S. 214, 231, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989) (finding that "[a] state indisputably has a compelling interest in preserving the integrity of its election process.")  The purpose of this amicus curaie brief is to stress to the Court the significant adverse impacts on the conduct

of an orderly election that will occur if the relief requested by the Plaintiffs is granted for the General Election.

<u>The Public Interest</u>

The Secretary and Defendant, Kim Barton, submitted into evidence Declarations from 23 Supervisors, which specifically document the adverse impacts that granting the relief requested by Plaintiffs will have on the orderly conduct of the General Election. The Supervisors who have submitted Declarations have combined experience as elected Supervisors of Elections of over 180 years. Based on their extensive experience with the specific needs in their respective counties, the Supervisors' Declarations should be given great weight in the Court's consideration of whether preliminary injunctive relief should be granted. <u>See</u> <u>Krivanek v. Take Back Tampa Political Comm.</u>, 625 So. 2d 840, 845 (Fla. 1993) (courts should regard the judgment of elections officials as presumptively correct and such judgments should be upheld).

The Declarations explain in detail how the relief requested by the Plaintiffs will adversely impact the General Election. The Supervisors' concerns can be grouped into the following general categories: 1) the impossibility of using a bilingual ballot for the General Election; 2) election software and equipment concerns; 3) staff and election worker training concerns; and 4) budgetary concerns. Each group of concerns will be addressed separately below.

1. <u>Impossibility of Using Bilingual Ballots in the General Election</u>

Plaintiffs request that this Court order the Supervisors to provide Spanish-language ballots for the General Election. The hearing on Plaintiffs' motion for preliminary injunction will be held on September 5, 2018. Supervisors are required to mail vote-by-mail ballots to absent uniformed and overseas voters ("UOCAVA") for the General Election by September 22, 2018. <u>See</u> § 101.62, Fla. Stat.; Declaration of Gill, Supervisor of Citrus County at 9. In order to obtain ballots in time to mail them on September 22, 2018, the Supervisors would have to send the official ballot to their printers between September 7 and September 10, 2018. <u>See</u> Declaration of Hays, Supervisor of Lake County at 5-6 (by September 7, 2018); Declaration of Hogan, Supervisor of Duval County at 6 (by September 10, 2018). This means that Supervisors will be required to translate and completely redesign the existing formatted ballots to provide the Spanish-language ballots in approximately 5 days. The Declarations make clear that this time frame is "impossible" for the Supervisors to meet. <u>See</u> Declaration of Gill, Supervisor of Citrus County at 14; <u>see also</u> Declaration of Chambless, Supervisor of Clay County at 5. Typically, designing the ballot, ordering paper and printing supplies, and contracting with third-party vendors requires extensive planning and is initiated weeks, if not months, in advance of an election. Declaration of Gill, Supervisor of Citrus County at 14; Declaration of Wilcox, Supervisor of Marion County at 7. In

addition, each county will be required to redesign multiple ballot styles. Redesigning the various ballot styles means the Supervisors will not simply be undertaking the task of taking a single piece of paper and translating it to Spanish. Thus, the Supervisor will be required to prepare multiple ballot styles within their respective counties, which could ultimately amount to dozens of ballot styles, depending on the number of precincts in the county. See Declaration of Oakes, Supervisor of St. Johns County at 3 (74 different ballot styles in the county). This work cannot be completed before the September 22, 2018 deadline. Declaration of Gill, Supervisor of Citrus County at 9. There simply is not enough time to produce Spanish-language ballots for the General Election.

    2.    <u>Election Software and Equipment Concerns</u>

The 32 Supervisors use three different State-approved voting systems: Dominion Voting Systems, Election Systems and Software ("ES&S"), and Sequoia Voting Systems. Programming these voting systems to provide for Spanish-language ballots and election material will require Supervisors to order and pay for new software from their respective vendors, have the software certified by the Secretary's Division of Elections, install the software, and test the software. See Declaration of Gill, Supervisor of Citrus County at 9. This process will take several weeks to over a month to complete. See id.; Declaration of Anderson, Supervisor of Hernando County at 4-5; Declaration of Corley, Supervisor of Pasco

County at 7-8.  Again, there simply is not enough time between now and the General Election for the Supervisors to implement these significant changes to their election systems.  Declaration of Gill, Supervisor of Citrus County at 9-10.

        3.      <u>Staffing and Election Worker Training Concerns</u>

Plaintiffs request that the Court order the Supervisors to provide certified translators and bilingual election workers and poll workers.  The impacts of these requests vary significantly based on the population and number of precincts in the county at issue.  Supervisors in smaller counties would be required to locate, hire, and train dozens of bilingual election workers while Supervisors in larger counties will be required to locate, hire, and train hundreds of bilingual election workers. <u>See, e.g.,</u> Declaration of Andersen, Supervisor of Bay Count at 5 (88 additional bilingual poll workers); Declaration of Hogan, Supervisor of Duval County at 14 (225 additional bilingual poll workers).  At this late date, it will be impossible for Supervisors to determine whether a sufficient number of bilingual individuals reside in the county, much less whether they are willing to serve as poll workers. <u>See</u> Declaration of Lenhart, Supervisor of Flagler County at 8-9.  The Supervisors are concerned these tasks cannot reasonably be accomplished before the General Election. <u>See</u> Declaration of Gill, Supervisor of Citrus County at 14; Declaration of Chambless, Supervisor of Clay County at 6.  In addition, the Supervisors have raised concerns that the requested relief will impose additional burdens on existing

staff, and potentially interfere with their currently assigned duties. See, e.g., Declaration of Ogg, Supervisor of Highlands County at 4-5.

    4.    <u>Budgetary Concerns</u>

Under Florida Law, Supervisors must prepare and submit their budgets to their respective board of county commissioners for approval.[3] See § 129.201, Fla. Stat. The Supervisors' fiscal year ends September 30 and a new year begins on October 1. Consequently, the Supervisors' budgets for 2018-2019 have already been submitted and approved by their respective boards. See id.; Declaration of Hays, Supervisor of Lake County at 11. Accordingly, the Supervisors would need to obtain approval from their respective boards before the Supervisors expend funds on any new tasks that involve a significant commitment of revenues.[4] See Declaration of Lux, Supervisor of Okaloosa County at 7-8.

The Plaintiffs' demand for Spanish-language ballots, Spanish-language election materials and Spanish-language election workers will require the expenditure of significant additional funds by the Supervisors. See, e.g.,

---

[3] The boards of county commissioners for the 32 putative class defendants are not parties to this proceeding.

[4] In Pinellas County v. Nelson, 362 So. 2d 279 (Fla. 1978), the Florida Supreme Court upheld a determination by a board of county commissioners to delete from the Supervisor's budget certain budget items that the Supervisor deemed were necessary, holding that "a board of county commissioners has wide discretion in the formulation of a county budget, subject to challenge on the ground that the board acted arbitrarily or capriciously in deleting a reasonable or necessary expense." Id. at 279.

Declaration of Hays, Supervisor of Lake County at 13.  The Supervisors' Declarations uniformly demonstrate that (a) the Supervisors' budgets do not contain sufficient funds to pay for the relief requested by the Plaintiffs and (b) the Supervisors do not have time to request and obtain additional funds from their boards.  <u>See, e.g., id.</u>; Declaration of Gill, Supervisor of Citrus County at 2.  Consequently, the Supervisors will not be able to obtain additional funding from their boards of county commissioners prior to the General Election.

<u>Conclusion</u>

The majority of the Supervisors who are named as putative class defendants in this case were not provided any opportunity to prepare for, or respond to, Plaintiffs' demands prior to the initiation of this lawsuit.[5]  Instead, Plaintiffs waited to file this suit until there were less than five weeks before the first overseas ballot for the General Election were required to be mailed.  <u>The Plaintiffs' lack of diligence created the time constraints described in the Declarations</u>. <u>See</u> <u>Benisek</u>, 138 S.Ct. at 1944 ("a party requesting a preliminary injunction must generally show reasonable diligence").

In summary, the Supervisors are dedicated to conducting fair, honest, secure and accurate elections.  The planning for the General Election is a "marathon" that

---

[5] As can be seen from the Declarations, many of the Supervisors may have already initiated some components of the relief requested by Plaintiffs.  <u>See, e.g.</u>, Declaration of Hogan, Supervisor of Duval County at 4-5.

began months ago. Declaration of Lenhart, Supervisor of Flagler County at 2; Declaration of Wilcox, Supervisor of Marion County at 12. Requiring Supervisors to accomplish extensive last-minute changes to these long-standing plans will jeopardize the integrity of the General Election. Moreover, if the relief requested by the Plaintiffs is granted, sufficient notice and implementation time must be provided to ensure that the relief can be properly implemented. Accordingly, the Court should deny Plaintiffs' motion for a preliminary injunction because it is contrary to the public's compelling interest in the General Election being conducted in an orderly manner.

Respectfully submitted this <u>30th</u> day of August, 2018.

<u>/s/ John T. LaVia, III</u>
Ronald A. Labasky, Esquire
Florida Bar No.: 206326
Brewton Plante, P.A.
215 S. Monroe St., STE 825
Tallahassee, FL  32301
Telephone: (850) 222-7718
Facsimile:   (850) 222-8222
Primary email:  rlabasky@bplawfirm.net
Secondary email:  fsase@bplawfirm.net

John T. LaVia, III
Florida Bar No.: 853666
Gardner, Bist, Bowden, Bush, Dee,
LaVia & Wright, P.A.
1300 Thomaswood Drive
Tallahassee, Florida  32308
Primary email:  jlavia@gbwlegal.com
Secondary email: rhonda@gbwlegal.com

*Attorneys for the FSASE*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on August 30, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I ALSO CERTIFY that the foregoing documents are being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                         /s/ John T. LaVia, III
                                         John T. LaVia, III, Esquire

**SERVICE LIST**

**CORINNE F JOHNSON**
**STEPHEN PAUL BERZON**
**MATTHEW JOHN MURRAY**
**STACEY MONICA LEYTON**
**MEGAN CLAIRE WACHSPRESS**
ALTSHULER BERZON LLP
SAN FRANCISCO CA
177 POST STREET
SUITE 300
SAN FRANCISCO, CA 94108
415-421-7151
Fax: 415-362-8064
Email: cjohnson@altber.com
 sberzon@altber.com
mmurray@altber.com
sleyton@altber.com
mwachspress@altber.com

*Attorney for Plaintiffs:  Medera, Faith In Florida, Hispanic Federation, Mi Familia Vota Education Fund, UNIDOSUS and VAMOS4PR.*

**STUART C NAIFEH**
DEMOS - NEW YORK NY
80 BROAD STREET
4TH FLOOR
NEW YORK, NY 10004
212-485-6055
Email: snaifeh@demos.org
*Attorney for Plaintiffs:  Medera, Faith In Florida, Hispanic Federation, Mi Familia Vota Education Fund, UNIDOSUS and VAMOS4PR.*

**CORBIN FREDERICK HANSON**
ALACHUA COUNTY ATTORNEYS OFFICE - GAINESVILLE FL
12 SE 1ST STREET
2nd Floor
GAINESVILLE, FL 32601
352-374-5218
Email: cfhanson@alachuacounty.us
 *LEAD ATTORNEY*
*Attorney for Defendant Barton*

**ROBERT CHARLES SWAIN**
ALACHUA COUNTY ATTORNEY'S OFFICE
12 SE FIRST ST
PO BOX 2877
GAINESVILLE, FL 32602
352-374-5218
Email: bswain@alachuacounty.us
*Attorney for Defendant Barton*

**NICOLE GINA BERNER**
SERVICE EMPLOYEES INTERNATIONAL UNION
1800 MASSACHUSETTS AVENUE NW
WASHINGTON, DC 20036
202-730-7383
Email: nicole.berner@seiu.org
Attorneys for Plaintiffs:  Mi Familia Vota Education Fund and VAMOS4PR

**KIRA ROMERO-CRAFT**
LATINO JUSTICE PRLDEF - ORLANDO FL
523 WEST COLONIAL DRIVE
ORLANDO, FL 32804
321-418-6354
Email: kromero@latinojustice.org
*Attorney for Plaintiffs: Medera, Faith In Florida, Hispanic Federation, Mi Familia Vota Education Fund, UNIDOSUS and VAMOS4PR.*

**MOHAMMAD OMAR JAZIL**
HOPPING GREEN & SAMS PA
TALLAHASSEE FL
119 S MONROE ST STE 300
TALLAHASSEE, FL 32301
850-222-7500
Fax: 850-521-2733
Email: mohammadj@hgslaw.com
Attorney for Defendant Detzner