IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

MARTA VALENTINA RIVERA
MADERA, on behalf of herself and all
others similarly situated, FAITH IN
FLORIDA, HISPANIC FEDERATION,
MI FAMILIA VOTA EDUCATION
FUND, UNIDOSUS, and VAMOS4PR,

                Plaintiffs,

v.

KEN DETZNER, in his official
capacity as Secretary of State for the
State of Florida, and KIM A. BARTON,
in her official capacity as Alachua
County Supervisor of Elections, on
behalf of herself and similarly-situated
County Supervisor of Elections,

                Defendants.
_____/

Case No. 1:18-cv-152-MW/GRJ


### DEFENDANT KIM A. BARTON'S MOTION TO DISMISS AND RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................   *ii*

DEFENDANT BARTON'S MOTION TO DISMISS...........................   1

DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS...........................................................................   3

RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION........   7

     TIMELINE.......................................................................................   9

     STANDARD.....................................................................................   12

     ARGUMENT....................................................................................   15

CONCLUSION........................................................................................   27

CERTIFICATE OF SERVICE..................................................................   29

# TABLE OF AUTHORITIES

**Cases**

*Action NC v. Strach,* 216 F. Supp. 3d 597 (USDC NC 2016)................. 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (US 2007).............................. 6

*Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932,
 92 L. Ed. 2d 209 (1986).......................................................... 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (US 2009)................................. 6

*Northeastern Florida Chapter of Association of General
 Contractors v. Jacksonville,* 896 F.2d 1283 (11th Cir. 1990)................ 16

*United States v. Jefferson County,* 720 F.2d 1511, 1519
 (11th Cir. 1983)........................................................ 16

*Perez-Santiago v. Volusia County,* Case No. 6:08-cv-1868-Orl-28KRS        18

2010 WL 917872 (MD, FLA 2010)......................................... 18

*United States v. Berks County,* 250 F. Supp. 2d 525 (ED PA, 2003)
 (Berks I)............................................................ 19, 20

*United States v. Berks County,* 277 F. Supp. 2d 570 (ED PA, 2003)
 (Berks II)............................................................ 21

*Puerto Rican Organization for Political Action v. Kusper,*
 350 F. Supp. 606 (ND ILL 1972)...................................... 21

*Benisek v. Lamone,* 138 S. Ct. 1942, 1944 (2018)................................ 25

*League of Women Voters of Fla., Inc. v. Dentzler,*
 Case No. 4:18-CV-251-MW/CAS, 2018 WL 3545079...................... 25

**Statutes**

52 USCS §10303(e)................................................................. 2, 5,
                                                                            12, 13

Fla. Stat. §97.057.......................................................................... 8

Fla. Stat. §100.061........................................................................ 9

Fla. Stat. §102.141........................................................................ 9

Fla. Stat. §102.112........................................................................ 9

Fla. Stat. §102.111........................................................................ 9

Fla. Stat. §99.121.......................................................................... 9

Fla. Stat. §101.62.......................................................................... 10

Fla. Stat. §101.5612...................................................................... 10

Fla. Stat. §102.012........................................................................ 10, 17

42 USCS §1973.............................................................................. 19

Fla. Stat. §101.68.......................................................................... 10

Fla. Stat. §101.657........................................................................ 10

Fla. Stat. §100.031........................................................................ 10

52 USCS §10303(f)(4)..................................................................... 13

**Rules**
Fed. R. Civ. P. 8............................................................................ 1

Fed. R. Civ. P. 10(b)...................................................................... 2

**Florida Constitution**
Fla. Const. Art. VIII, §6(1)(d).......................................................... 7

**Other**
https://www.tampabay.com/florida-politics/buzz/2018/08/24/lack-
  of-campus-early-voting-sites-stuns-league-of-women-voters/........... 26

<u>DEFENDANT BARTON'S MOTION TO DISMISS</u>

1.      Plaintiff Marta Valentina Rivera Madera (hereinafter referred to as "Plaintiff" or "Plaintiff Rivera Madera"), filed suit against the Alachua County Supervisor of Elections, Kim A. Barton, (hereinafter "Supervisor Barton" or "Defendant Barton"), demanding relief in the form of Spanish language election materials and assistance, including Spanish language ballots, for the November 2018 general election cycle. Through Plaintiffs' pleadings, Plaintiffs desire to establish a class of defendants.

2.      For Plaintiffs to state a cause of action upon which this Court may grant the relief sought, they must properly state a basis for this Court's jurisdiction, show how they are entitled to relief, and state a demand for relief sought.  Fed. R. Civ. P. 8.

3.      The organizational Plaintiffs allege a general expenditure of funds or support in the putative class of counties, but do not specifically allege any direct injury or dealings in Alachua County, and so do not establish the standing to bring suit against Supervisor Barton. Therefore, this Court does not have subject matter jurisdiction to review the claims set forth by, or on behalf of, the organizational Plaintiffs, and this Court should dismiss those claims.

4.      Additionally, given the fashion in which Plaintiff has filed, she alleges facts and makes arguments that are irrelevant as to how Supervisor Barton handles

elections in Alachua County. Therefore, this Court should not require Supervisor Barton to file a responsive pleading addressing those particular allegations and arguments that do not establish any basis on which relief may be granted against Supervisor Barton specifically. Supervisor Barton is not in a position to defend allegations and arguments against Secretary of State Ken Detzner, and so this Court should strike those allegations and require the Plaintiff to replead, as appropriate.

5.     Plaintiffs allege one cause of action against both Supervisor Barton and Secretary Detzner, set forth in one Count. This is not in compliance with Fed. R. Civ. P. 10(b) in that it is clear from the Plaintiffs' allegations that the authority and roles of the Secretary of State and the Alachua County Supervisor of Elections are separate and distinct. Therefore, claims against Supervisor Barton and Secretary Detzner should be set forth in separate counts. Even in the event that the Court were to grant a defendant class at a later time, the action against the Secretary of State is distinct from the action against any individual County.

6.     Plaintiffs fail to state an adequate demand for relief sought because Plaintiffs fail to allege what constitutes "sufficient Spanish-language election materials and assistance for the 2018 election." As this is not a defined term under the Voting Rights Act, 52 U.S.C. §10303(e), the pleadings do not set out with particularity how Supervisor Barton has failed to comply with Section (e) of the Voting Rights Act, and do not articulate a clear demand for relief sought. Without

additional information, they fail to state a cause of action under the Voting Rights Act.  Therefore, this Court should dismiss Plaintiffs' Complaint.

7.     To withstand a motion to dismiss, even a complaint attempting a class action must set forth specific allegations against the representative defendant.  At present, the Plaintiffs' Complaint sets forth the most general of allegations without setting forth any specific allegations as to how Supervisor Barton runs the elections in Alachua County, and how those elections fall short of the requirements of Section (e) of the Voting Rights Act. Instead, Plaintiffs rely exclusively on conclusory statements that Supervisor Barton holds an "English only election" in Alachua County.

<u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>

Defendant Barton is currently in the odd position of having to respond not only to a Petition for Temporary Injunction, but also to a Complaint intended to initiate a class action. All of this is occurring at an expedited rate prior to the Court hearing any matter concerning the class action, or being presented with any pleadings directed specifically to Defendant Barton.  As the Complaint's allegations against Supervisor Barton are inextricably caught up with the class action, she is forced to respond in her individual capacity until such time as the Court certifies a class, if it so chooses.

- 3 -

The clearest issue with the Complaint, as filed, is that Plaintiffs conflate allegations regarding the Secretary with those directed at the various supervisors of elections throughout Florida.  In their Complaint, Plaintiffs describe the Secretary and Supervisors of Elections as being separate and distinct in the nature of their roles and responsibilities.  Additionally, the relief sought from each are quite different with actions being sought from the Secretary, which are beyond the authority of the Supervisors.  This Court should dismiss Plaintiffs' Complaint and require Plaintiffs to replead the Complaint to set forth those allegations which apply solely to the Supervisor(s), those which apply to the Secretary, and at least two separate counts setting forth the different theories of the case as applied to each of the defendants.

While Plaintiffs have used a great deal of space to justify a class action, they have not clearly set forth any specific allegations of concrete damage to the organizational Plaintiffs to show that they are entitled to bring an action against Supervisor Barton for her actions in Alachua County.  On that basis, as pled, the Complaint does not establish the standing of the organizational Plaintiffs, and does not set forth a cause of action upon which relief may be granted to Plaintiffs. Specifically, Plaintiffs have not alleged specific standing arising out of the actions of Alachua County. *See Action NC v. Strach*, 216, F. Supp. 3d 597, (USDC NC 2016). "To bring suit on its own behalf an organization must meet the same standing requirements that apply to individuals, *i.e.*, injury-in-fact, causal connection and

redressability." *Id.* at 616.  Therefore, based on Plaintiffs' failures, this Court should dismiss the organizational Plaintiffs.

Additionally, Plaintiffs allege that the Voting Rights Act requires specific Spanish language materials and assistance under 52 USCS §10303(e). No such specific materials and assistance are required or anticipated by the language of the statute.  Instead, the statute provides as follows:

> Completion of requisite grade level of education in American-flag schools in which the predominant classroom language was other than English.
>
> **(1)**Congress hereby declares that to secure the rights under the *fourteenth amendment [USCS Constitution*, Amendment 14] of persons educated in American-flag schools in which the predominant classroom language was other than English, it is necessary to prohibit the States from conditioning the right to vote of such persons on ability to read, write, understand, or interpret any matter in the English language.
>
> **(2)**No person who demonstrates that he has successfully completed the sixth primary grade in a public school in, or a private school accredited by, any State or territory, the District of Columbia, or the Commonwealth of Puerto Rico in which the predominant classroom language was other than English, shall be denied the right to vote in any Federal, State, or local election because of his inability to read, write, understand, or interpret any matter in the English language, except that in States in which State law provides that a different level of education is presumptive of literacy, he shall demonstrate that he has successfully completed an equivalent level of education in a public school in, or a private school accredited by, any State or territory, the District of Columbia, or the Commonwealth of Puerto Rico in which the predominant classroom language was other than English.

It is therefore up to Plaintiffs to allege how Alachua County is failing to meet the requirements in some fashion rather than through simple conclusory language in

the Complaint.  Though Plaintiffs make demands in their Motion for Preliminary Injunction, the Complaint contains allegations that are purely conclusory and general.  As explained by the United States Supreme Court in *Bell v. Twombly,* "a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *See Bell v. Twombly,* 550 U.S. 544, 555 (US 2007).  *See also Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  As the Court explained further in *Ashcroft v. Iqbal:*

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Twombly, at 570.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id., at 556.*  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Ibid.*  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id., at 557* (brackets omitted).

*See* Ashcroft v. Iqbal, 556 U.S. 662 (US 2009).

Based on the standards outlined by the United States Supreme Court, Plaintiffs fail to provide anything more than conclusory allegations of Voting Rights Act violations and recitations of the elements of a cause of action.  As a result of this insufficiency, this Court should dismiss the Complaint.

<u>RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION</u>

<u>INTRODUCTION</u>

Kim A. Barton is the Supervisor of Elections for Alachua County. She took office in January 2017.  This is the first general election cycle for which she has been the Supervisor of Elections. The office of Supervisor of Elections is a constitutional office created by Article VIII, Section 6(1)(d) of the Florida Constitution. The Supervisor does not have separate taxing authority, and is part of the overall County budget created by the Board of County Commissioners.  While Alachua County is a charter county, unlike other counties in the State, it has not changed the status of the Supervisor of Elections as a Constitutional Officer. The fiscal year for Alachua County government is October 1 to September 30. The Board of County Commissioners sets a preliminary budget in July, after which the property tax rate, and therefore the overall budget amount, may not increase. The Board of County Commissioners adopts the final budget at a public hearing in September, and the tax bills go out beginning in November.

At this stage of the proceedings, Alachua County will not contest the figures presented by Plaintiffs' expert.  His opinion, based upon 2015 data, is that there are 421 Puerto Ricans in Alachua County who do not speak English well. Supervisor Barton does not have any data or figures on how many of these individuals are registered to vote in Alachua County, or their addresses.

Alachua County is divided into 63 voting precincts and, as of the primary election for 2018, has 174,610 registered voters. Puerto Rican birth is not included in data that is readily available to Alachua County in the voter database without opening each individual voter record. Additionally, this method of determining affected persons in Alachua County is flawed since it is unlikely that all persons of Puerto Rican birth would need Spanish language materials and assistance to meaningfully cast their vote. The Supervisor of Elections has one office located on Main Street in Gainesville. In the Supervisor of Elections office, she provides Spanish language voting information material, which the State of Florida provides. In addition, Supervisor Barton employs Spanish-speaking staff who can assist voters who come to register at her office, or who call for information.

As Supervisor of Elections, under Florida Law, Supervisor Barton does not issue Driver Licenses or Florida Identification Cards, and her office is not identified as the "DMV." Sec. 97.057, Fla. Stat.

It is clear from the Plaintiff's filings that neither she, nor her putative class, understand the practicality of modern election systems. While Plaintiff relies on decades old case law, the election process, as well as election technology, has changed significantly. Plaintiff's allegations and demands do not reflect or consider this evolution of the election cycle.

<u>TIMELINE</u>

The most relevant dates for the current and upcoming 2018 election cycles are:

- The primary election, August 28, 2018, is 10 weeks prior to the general election. Sec. 100.061, Fla. Stat. These elections will determine federal, state, regional, county, and local elective offices and referenda.

- Preliminary reports from the County canvassing boards are due within 30 minutes after the polls close, and in 45-minute increments until the entire vote has been counted. Sec. 102.141, Fla. Stat.

- September 4 is the deadline for County canvassing boards to submit their official results to the Department of State. Sec. 102.112, Fla. Stat.

- On September 6, the State canvassing board meets to certify official results for federal, state and multi-county offices. Sec. 102.111, Fla. Stat.

- By September 9, the Department of State is expected to certify candidates for the general election ballot to the various Supervisors of Elections. Sec. 99.121, Fla. Stat.

- Upon receipt of the list of candidates, the general elections ballot is finalized by Alachua County, and transmitted to a printer. This is the final ballot for the election. Upon receipt from the printer, vote-by-mail ballots have to be prepared.

- September 22 is the deadline for state Supervisors of Elections to send vote-by-mail ballots to absent stateside uniformed and overseas voters for the general election (not later than 45 days before the election). Sec. 101.62, Fla. Stat.

- October 2 through October 9 is the mandatory seven day window for Supervisors of Elections to mail vote-by-mail ballots to all domestic voters who requested vote-by-mail ballots.

- October 12 through October 26 is the period in which logic and accuracy tests for the general election may be conducted. Sec. 101.5612, Fla. Stat.

- October 17 - deadline for Supervisors of Elections to appoint poll workers for the general elections. Sec. 102.012, Fla. Stat.

- October 22 - County canvassing board may begin canvassing vote-by-mail ballots for the general election. Sec. 101.68, Fla. Stat.

- October 22 - Early voting may begin at the discretion of the Supervisor of Elections. Sec. 101.657, Fla. Stat.

- October 27 - Mandatory early voting period begins for the general election. Sec. 101.657, Fla. Stat.

- November 6 - general election. Sec. 100.031, Fla. Stat.

This is the timeline of relevant events and dates predating the filing of Plaintiff's Complaint:

- Plaintiff Rivera Madera registered to vote at what she refers to as the "DMV" when she went to obtain her Florida ID. Declaration of Rivera Madera (ECF 2-1 p 3). This facility is not under the control of Supervisor Barton.

- April 3, 2018 – Plaintiff's counsel first indicated an interest in this issue in a mass mailing to Supervisor Barton and the 31 other target Defendants. (ECF 3, Attachment 1, Exhibit A).

- April 9, 2018 – Supervisor Barton responded to Plaintiff's April 3, 2018 letter, indicating that she would look into the matter, and asking for any assistance that the plaintiff organizations could give her in determining the numbers. She indicated her willingness to work to accomplish the requirements of Paragraph 4(e). (ECF 3-14).

- June 7, 2018 – Plaintiffs responded to Supervisor Barton's April 9, 2018 letter, almost two months after it was sent. (ECF 3-25)

- July 30, 2018 – Plaintiffs began their investigation regarding Supervisor Barton when, as set forth in paragraph 8 of the Declaration of Ahren Lavis, (ECF 2-3, p. 4), a review of the Alachua Supervisor of Elections website was made, followed by direct contact with a spokesperson for Supervisor

Barton on August 7th. The material clearly shows that a great deal of time and effort was spent so that a class action could be attempted from the beginning, rather than filing as early as May against Supervisor Barton and the Secretary of State, and bringing in other defendants as allowed by the Rules.

- August 14, 2018 – Plaintiffs e-mailed the office of the undersigned counsel requesting a conference. This was the initial contact between Plaintiffs and the office of the undersigned, when undersigned became aware of the potential for this lawsuit.

- August 15, 2018 – Conference between Plaintiffs and the undersigned counsel. During this conference, the undersigned requested a copy of the Complaint, which was not provided until after suit had been filed.

- August 16, 2018 – Plaintiffs filed the Complaint initiating this action, 129 days after Supervisor Barton's initial response to Plaintiff's counsel, 12 days before the primary election, and 36 days before the first set of ballots for the general election have to be mailed.

## STANDARD

The Plaintiff's claim is based upon failure to comply with the Voting Rights Act (VRA). The pertinent portion of the law as codified is found at 52 USCS § 10303(e) as quoted *supra*.

The instant case seeks a remedy only under paragraph (e), which applies to Puerto Ricans who have difficulty with English and where Spanish is their primary language. This provision is not to be confused with 52 USCS § 10303(f)(4) which deals with "Language Minorities" and is inapplicable, but obviously contrastable, to the matters raised in the pleadings. This section is much more aggressive as to what actions must be taken when certain thresholds of language minorities are present. It is useful to compare the language of 52 USCS § 10303(f)(4) with the language cited above from 52 U.S.C. 10303(e):

> **(4)** Whenever any State or political subdivision subject to the prohibitions of the second sentence of section 4(a) [subsec. (a) of this section] provides any registration or voting notices, forms, instructions, assistance, or other materials or information relating to the electoral process, including ballots, it shall provide them in the language of the applicable language minority group as well as in the English language: *Provided,* That where the language of the applicable minority group is oral or unwritten or in the case of Alaskan Natives and American Indians, if the predominate language is historically unwritten, the State or political subdivision is only required to furnish oral instructions, assistance, or other information relating to registration and voting.

These sections are written in strikingly different manners, illustrating a strikingly different Congressional intent between these two statutory provisions. The intent of paragraph (e) is that an individual Puerto Rican who speaks Spanish cannot be subjected to a language test in exercising her right to vote or denied the right to vote based on her inability to read, write, understand, or interpret English. However, the way in which this is achieved is not set forth in paragraph (e) as it was

in paragraph (f). Congress chose not to include the same explicit foreign language ballot requirement in paragraph (e) as it provided for under paragraph (f). This Defendant would suggest to the Court that this obvious difference between the sections indicates that Congress intended to prescribe how jurisdictions met the "Language Minority" requirements of paragraph (f), but intended to allow local jurisdictions flexibility to meet the requirements of paragraph (e) in a variety of ways and through a variety of materials and assistance. Local jurisdictions were given a base standard to comply with, but not a mandate on how to meet the needs of what can potentially be a very small population of affected voters within a county. The statutory language of paragraph (e) does not require counties to expend funds providing the same materials as provided to the language majority when the Puerto Rican, Spanish speaking population might be much smaller than a language minority group that exceeds the threshold of paragraph (f).  Paragraph (e) anticipates that other means, including other materials and assistance, may accomplish the same goal of affording individuals with the right and opportunity to meaningfully and confidently vote. The appropriateness of the method of meeting a county's obligations under paragraph (e) will be determined by a number of factors, including the size of the population and the efficacy of the methods used to make their participation in the election meaningful.

In reviewing the standard, it is important to keep in mind that the standard under Paragraph (e) is for Puerto Ricans, not Hispanics, who are generally covered under Paragraph (f). Neither these groups, nor their identifying terms, are interchangeable.

## ARGUMENT

## POSITION

Supervisor Barton agrees that the terms of the VRA as it applies to Puerto Ricans applies to the individual Plaintiff. The question is, to what extent must Supervisor Barton go in providing supporting materials in Spanish that will allow the Plaintiff to meaningfully engage in the electoral process and cast her vote? Supervisor Barton believes that the action she is taking in Alachua County meets the requirements of the VRA, despite Supervisor Barton not currently providing the actual voting ballot in Spanish. Due to Plaintiffs' delay, even if the VRA requires Supervisor Barton to provide a Spanish language ballot under paragraph (e), it is too late in the process to accomplish this in time for the general election on November 6, 2018.

Plaintiffs' request for injunctive relief, including their demand for a Spanish language ballot, should be denied for failure to satisfy the required elements for injunctive relief, as outlined below.

**Element (1) - A substantial likelihood of success on the merits:**

"A preliminary injunction is a powerful exercise of judicial authority in advance of trial. The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *Northeastern Florida Chapter of Associaton of General Contractors v. Jacksonville*, 896 F. 2d 1283 (11 Cir 1990)

The preliminary injunction is an extraordinary and drastic remedy not to be granted until the movant 'clearly carries the burden of persuasion' as to the four prerequisites. "The burden of persuasion in all of the four requirements is at all times upon the plaintiff." *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir. 1983).

The first test of a preliminary injunction is the Plaintiff's likelihood of success on the merits. The Plaintiff seeks relief against Supervisor Barton by asking for a determination that she is in violation of the VRA by failing to provide voting materials and ballots in Spanish, along with various other undescribed types of assistance. Supervisor Barton agrees that she does not provide ballots in Spanish as of this time; however, she does provide a number of materials in Spanish, including, but not limited to, a website that provides translated content through Google Translate on a number of pages that link to the official updated Spanish language documents on the State of Florida site. Supervisor Barton provides bilingual support

in her office, and hires a number of bilingual poll workers, as available. Supervisor Barton was unaware of any issues or concerns related to her Spanish language materials and assistance prior to the correspondence from Plaintiff's counsel, but plans on having the Official Voters' Guide translated into Spanish along with an informational pamphlet that will have the individual items on the ballot translated into Spanish for reference by voters. While it will have all the information that is part of a sample ballot, as that is a defined term, we will refer to this as a demonstration ballot, and it will be available in advance of the November 2018 election, as well as on Election Day, to be used as a reference in the voting booth.

Plaintiff's proposed remedy is fairly expansive and vague. Plaintiff uses an analog of Spanish surnames for Puerto Ricans. The University of Florida attracts individuals from all over Florida with ancestry from Cuba, Mexico, and Latin America, not to mention descendants from the original Spanish settlers of Florida who still carry the ancestral family surnames, despite speaking with a decidedly southern drawl.  As of the primary election, there were 12,539 registered voters who self-identified as Hispanic. That would be somewhat over 11,000 more than those identified as Puerto Rican by Plaintiff.

Supervisor Barton is making her best efforts to locate and hire bilingual poll workers by the October 15th deadline. Additionally, poll workers must be registered voters in Alachua County, per Sec 102.012 (2), Fla. Stat., and in any precinct all

- 17 -

must not be from the same party. These are additional challenges that have to be overcome to provide bilingual poll workers. To ameliorate this, Supervisor Barton is making bilingual poll workers available by phone so that every precinct will be able to have a voter call someone and seek aid in casting their ballots if that particular precinct does not have a bilingual poll worker.

Plaintiff's affidavit only looked at two items -- the ballot and poll workers. Yet Supervisor Barton provides all the forms available from the State, she posts Spanish instructions at every precinct and in the vote-by-mail ballots, and she will have additional materials available prior to the general election and as part of her normal course of business. At this point, the Plaintiff has not shown that the likelihood of success on the merits is high.

The Plaintiff has sought to bolster her case by providing a number of consent judgments. As the Court is well aware, consent judgments carry no precedential value other than between the parties who have agreed to them. The fact that other counties or cities may have chosen to resolve a matter for whatever reason, policy, financial, etc., does not serve as evidence that what those jurisdictions voluntarily agreed to do is necessary for Supervisor Barton to do. As a matter of interest, one of the cases the Plaintiff cites to, *Perez-Santiago v. Volusia County,* Case No. 6:08-cv-1868-ORL-28KRS, has a number of reported decisions.  The most interesting for this Court to consider at this time is reported at 2010 WL 917872 (MD, FLA 2010).

The parties filed cross motions for summary judgment. The Plaintiff moved that as a matter of law, a Spanish language ballot was required. The Court responded as follows:

> "Even assuming arguendo that a Spanish-language ballot might under some circumstances be required in order for a political subdivision to comply with section 4(e), in light of the disputes regarding Plaintiffs' need for assistance and the amount of assistance that was provided, the issue of the need for Spanish-language ballots in this case cannot be determined on summary judgment. Accordingly, Plaintiffs' motion for summary judgment (Doc. 65) must be denied."

The Plaintiff cites the following cases in support of her claim for a preliminary injunction:

Procedurally, in *United States v. Berks County* (Berks I) the Plaintiff United States, in a complaint seeking declaratory and injunctive relief, alleged that defendants, a county, a board of elections, and the director of elections, violated the Voting Rights Act of 1965, as amended, 42 U.S.C.S. § 1973 et seq., and the guarantees of the Fourteenth and Fifteenth Amendments of the United States Constitution. *United States v. Berks County* 250 F. Supp 2d 525 (ED PA, 2003). The government filed a motion for a preliminary injunction.

The evidence in *Berks I* was that there was a hostile and disparate treatment of Hispanic and Spanish speaking voters, including poll workers, turning away Hispanic voters. *Id* at 528. In the instant case, we have not yet had the opportunity to perform any discovery, and there have not been any allegations of hostility

towards Puerto Ricans or Hispanics. This is a very different scenario than that of *Berks I,* where there had been a two year investigation of Berks County showing the depth of the hostility and disparity along with a significant number of Spanish only speakers. Again, the Court noted a large community of limited English proficient voters and noted that defendants did not recruit, appoint, train, or maintain a pool of poll workers with Spanish language skills. *Id. at 529.* There was a history of the government (federal) communicating the issues to the defendants over the course of a two year investigation, along with a number of local residents and articles in the newspaper. The Court noted that the county officials refused to remedy the situation. *Id. at 530.*

Notably, the defendant in *Berks I* did not defend on the basis that the request for a Spanish language ballot was not possible for the upcoming election, nor was the type of voting machinery used described.

The Court made light of the defendant's argument that the decision could be used to require a bilingual ballot in every voting precinct in the country, and pointed out that the government was only asking for bilingual ballots in those precincts where at least 5% of the registered voters were Hispanic (not Puerto Rican). *Id*. at *537.*

The Court's ruling granted relief as to those precincts where 5% or more of the registered voters were Spanish speaking, established a working group, and included, as part of the review, a cost benefit analysis. *Id*. at 543.

*United States v. Berks County* (*Berks II*) made the temporary injunction permanent and, in large part, based it upon the history of hostility towards a large segment of the registered voters in Berks County. *United States v. Berks County,* 277 F. Supp. 2d 570 (ED PA 2003).

*Puerto Rican Organization for Political Action v. Kusper* was decided on October 30, 1972, some 8 days before the election. *Puerto Rican Organization for Political Action v. Kusper* 350 F. Supp 606 (ND ILL 1972). The Defendants were members of the Election Board of Chicago. Procedurally the court noted that:

> For several weeks after the filing of the action, the Court and counsel for plaintiffs, defendants and amici curiae held a series of conferences to discuss what kinds of assistance to Spanish speaking voters could be provided in the time available before the November 7, 1972 General Election. Defendants' counsel have made it clear that their participation in these conferences does not constitute any concession on their part that the Court has jurisdiction or that the complaint has merit. During the period the conferences were going on, the defendants determined that it was practicable to take certain action to assist Spanish-speaking voters before November 7 and advised the Court and counsel for the plaintiffs and amici curiae that **they intended to take this action regardless of whether plaintiffs persisted in their motion for preliminary injunction or withdrew the motion in view of defendants' announced intentions**. Plaintiffs appear to be satisfied that the steps defendants have said they intend to take are all that they reasonably could be asked or ordered to do in the time available between the date the case was commenced and the November 7 election, but they have persisted in their motion for preliminary

injunction because defendants refuse to enter into an agreement that they will do as they have said they intend to do. Accordingly, an evidentiary hearing was held on the motion for preliminary injunction. *Id 608*

Ultimately, the Court entered the preliminary injunction on the basis that while the Defendants agreed to take action, they did not admit that the VRA required that such assistance be provided. They stated that it was simply an experiment that they conducted voluntarily, and not by reason of any rights of members of the plaintiff class. *Id.* at 611. The Court was concerned that it be clear that this was not simply a voluntary requirement, but that the law required certain actions be taken. Because of the "ambivalence of the Defendants," the Court entered the preliminary injunction. *Id.* at 611.

Given the date, 1972, it is possible that the voting machines used were mechanical machines, where the voter went inside the machine, pulled a lever to close the curtain, and pulled levers down reflecting the voter's choice (counsel is old enough to have voted on those dinosaurs). The court required that certain labels be changed, but it appears that the parties agreed that this is what was to be done prior to the election, and Defendants had already agreed to do it regardless of the existence of an injunction. That is different than the situation we have in this matter where there is no ability to redesign the ballot without major disruption of the election process.

Further, it is not the position of Supervisor Barton that her actions are merely voluntary. She is doing them with the intent of meeting the needs of the Puerto Rican members of the community and compliance with the Voting Rights Act. This is the first time that some of these Spanish language materials and assistance are being tried, and they will need to be evaluated after the election to determine their efficacy and what changes need to be made before the next election. Supervisor Barton's intent is to follow through on these representations.

**Element (2) - that plaintiff will suffer irreparable injury if the court does not issue a preliminary injunction:**

Plaintiff has not proven the second requirement, that she will suffer irreparable harm if the injunction is not issued. The only evidence of this is that she went to the "DMV" and, according to her Declaration, the process to register was difficult, and the only Spanish language assistance available to her was her daughter. As stated above, the conduct of the Division of Highway Safety and Motor Vehicles in procuring registrations is beyond the control of Supervisor Barton. The other items proffered as proof in support of their motion are raised by the Plaintiffs in the Ahrens declaration, *supra*, alleging the inability to find translated materials on the website, and the fact that some bilingual poll workers will be hired. The Declaration of Kim A. Barton includes the items available from the website in Spanish. As stated above, there will be a printed voter's guide or demonstration ballot, which will

mirror the official ballot, and be available well in advance of the election for Spanish speaking voters. Plaintiff will be able to take this into the voting booth, or use it for early voting. The current plan is to also make it available online. In the presence of this material, the Plaintiff will not suffer irreparable harm by not having a translated ballot.

## Element (3) - that the threatened injury to Plaintiffs outweigh any harm that might result to the defendant:

The third element, that of balancing the equities, is where Plaintiffs fail to carry any burden in seeking a preliminary injunction.

It is clear that the Plaintiffs' plan all along has not been to simply target Supervisor Barton and Secretary Detzner, but to put a class in place. The timing set by Plaintiffs can be nothing other than intentional, to force the issue to be defended on short notice.

The Plaintiffs knew by April 9th that Supervisor Barton was unaware of any problem with her process. They did not follow up on that until early June, and did not seek to obtain their affidavits until late July and early August. Had Plaintiffs brought suit against Supervisor Barton and Secretary Detzner shortly after Supervisor Barton's response in April, not only would there have been plenty of time to attempt changes to the general election process in Alachua County, but to the

primary as well, had the same accelerated hearing schedule been followed as in this case.

As this Court has previously noted, The Supreme Court has stated "[A] party requesting a preliminary injunction must generally show reasonable diligence." *Benisek v. Lamone,* 138 S. Ct. 1942, 1944 (2018).

In this situation, the Declarations of Supervisor Barton (Attachment 1) and Will Boyette (Attachment 2) indicate that a bilingual ballot for the general election cannot be designed and translated in time to be printed and mailed out by the required deadlines. Defendant Barton has stated her difficulties in obtaining bilingual poll workers within her budget, what it would take to increase that budget in the hopes of finding more, and the time limits she has in which to accomplish it.

Had the matter been initiated earlier, when the Plaintiffs were clearly intending on pursing a claim to assist Plaintiff Rivera Madera, perhaps these issues could have been ruled on or negotiated through.  In this matter, the balance of the equities does not favor the Plaintiff.

This Court is well aware of short time frames. In *League of Women Voters of Fla., Inc. v. Dentzler,* Case No. 4:18-CV-251-MW/CAS, 2018 WL 3545079, this Court held that early voting could be held on college and university campuses. The date of that order was July 24th. Yet, according to the press, not all Supervisors found themselves in a position where they could change their plans. See

https://www.tampabay.com/florida-politics/buzz/2018/08/24/lack-of-campus-early-voting-sites-stuns-league-of-women-voters/

As the story reports, some Supervisors were able to move quickly, some had already made their plans for the general election, and some were able to make changes to provide early voting on campus for the general election, but not the primary election. While the location of early voting sites is discretionary, and not a direct analog to the VRA, it demonstrates how time constrains the decisions that a Supervisor of Elections can make.

Another issue is the availability of additional bilingual poll workers. The Plaintiff proposes a standard of their own and courts have imposed other standards, but there is no single standard which has been established.  Other than best efforts at this point, given the limitation in available budget and the legal requirements to be a poll worker, Supervisor Barton is limited in what she can do prior to the deadline for poll workers along with the necessity to train them as required by law. Given what the Plaintiff is asking for, those resources may never exist in Alachua County.

Similarly, the standard Plaintiff suggests is vague in that who is to determine what is a "Spanish" name?

**Element (4) - that the public interest will not be disserved by grant of a preliminary injunction:**

The fourth requirement is whether the injunction would be in the public interest. It is a given there is a high public interest in a participatory democracy to ensure that those wishing to meaningfully exercise their vote are able to. There is a public interest in ensuring the requirements of the VRA are followed. In this instance, Supervisor Barton believes that the requirements of the VRA have been followed. However, were she to have to go back and redesign the ballot to be bilingual, it would delay the voting process in that it would not only delay the ballots being sent to the printer, it would delay the ballots being sent out to at least the overseas voters, and perhaps the domestic voters. It would delay ensuring that the voting machines work properly, as they must have ballots to be tested because of the popularity of voting by mail and early voting, and it could impair the ability of the canvassing board to count and certify the votes.

Under the circumstances, based upon what Supervisor Barton is currently doing, and is willing to do in response to this suit, it is not in the public interest to require that the ballot be redesigned for the general election on November 6, 2018.

## CONCLUSION

Based upon the forgoing set forth in the Motion to Dismiss and the Response to the Plaintiffs' Motion for Temporary Injunction, the Court should rule that the

Organizational Plaintiffs have failed to establish standing to satisfy the jurisdictional requirements of this Court, that the Plaintiffs have further failed to allege with sufficient specificity their basis for seeking relief under the Voting Rights Act in that they have failed to establish how Supervisor Barton is failing to comply, and that the Complaint should be repled to separate the allegations against the Secretary of State and the Supervisor(s) into separate counts.

Further, the Plaintiffs' Motion for Temporary Injunction should be denied on the grounds that the pleadings and evidence proffered do not establish a substantial chance of success on the merits. The Plaintiffs will not suffer irreparable harm in that Supervisor Barton is making a substantial effort to meet the needs of the Plaintiff.  The balancing of equities favor Supervisor Barton in that it is impossible to change the ballot at this late date, which is due, in no small part, to the choices made by the Plaintiffs in the timing of filing their action.  Finally, the granting of an injunction is contrary to the public interest in a smooth and orderly election process.

Respectfully submitted,

ALACHUA COUNTY ATTORNEY'S OFFICE

By:    */s/ Robert C. Swain*
        Robert C. Swain
        Senior Assistant County Attorney
        Florida Bar No. 366961
        */s/  Corbin F. Hanson*
        Corbin F. Hanson
        Assistant County Attorney
        Florida Bar No. 99435

12 Southeast 1st Street
Gainesville, Florida 32601
Phone: (352) 374-5218/Fax: 374-5216
bswain@alachuacounty.us
cfhanson@alachuacounty.us
CAO@alachuacounty.us
Counsel for Kim A. Barton, in her official
capacity as Alachua County Supervisor of
Elections

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B)

I HEREBY CERTIFY, pursuant to Rule 7.1(B), N.D. Fla. Local Rules, that

the undersigned has conferred with opposing counsel in this matter and was unable

to resolve the issue.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

I HEREBY CERTIFY, pursuant to Rule 7.1(F), N.D. Fla. Local Rules, that

this document is less than 8,000 words. Specifically, according to the word count of

the word processing system used to prepare this document, it is 7,120 words,

inclusive of the headings, footnotes and quotations, but excluding the case style,

signature block, and Certificate of Service.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been

electronically filed with the U.S. District Court, Northern District of Florida, via the

CM/ECF portal, and a copy has been served to the following Service List this __30th__

day of August, 2018.

ALACHUA COUNTY ATTORNEY'S OFFICE

By:    */s/ Robert C. Swain*
Robert C. Swain
Senior Assistant County Attorney
Florida Bar No. 366961
*/s/ Corbin F. Hanson*
Corbin F. Hanson
Assistant County Attorney
Florida Bar No. 99435
12 Southeast 1st Street
Gainesville, Florida 32601
Phone: (352) 374-5218/Fax: 374-5216
bswain@alachuacounty.us
cfhanson@alachuacounty.us
CAO@alachuacounty.us
Counsel for Kim A. Barton, in her official
capacity as Alachua County Supervisor of
Elections

**Service List**

Counsel for Plaintiffs Marta Valentina Rivera Madera, Faith in Florida, Hispanic
Federation, Mi Familia Vota Education Fund, UnidosUS, and Vamos4PR:

| | |
|---|---|
| CORINNE F. JOHNSON | KIRA ROMERO-CRAFT |
| cjohnson@altber.com | kromero@latinojustice.org |
| MATTHEW JOHN MURRAY | Latino Justice PRLDEF –Orlando, FL |
| mmurray@altber.com | 523 West Colonial Drive |
| MEGAN CLAIRE WACHSPRESS | Orlando, FL  32804 |
| mwachspress@altber.com | |
| STACEY MONICA LEYTON | STUART C. NAIFEH |
| sleyton@altber.com | snaifeh@demos.org |
| STEPHEN PAUL BERZON | Demos – New York |
| sberzon@altber.com | 80 Broad Street, 4th Floor |
| Altshuler Berzon LLP– San Francisco | New York, NY  10004 |
| 177 Post Street, Suite #300 | |

San Francisco, CA  94108

ESPERANZA SEGARRA
esegarra@latinojustice.org
JACKSON CHIN
jchin@latinojustice.org
LatinoJustice PRLDEF
99 Hudson Street, 14th Floor
New York, NY  10013


Counsel for Plaintiffs Mi Familia Vota Education Fund and VAMOS4PR:

| NICOLE GINA BERNER | KATHERINE ROBERSON-YOUNG |
|---|---|
| nicole.berner@seiu.org | katherine.roberson-young@seiu.org |
| Service Employees International Union | Service Employees Intl. Union |
| 1800 Massachusetts Avenue NW | 11687 N.E. 18th Drive |
| Washington, DC  20036 | North Miami, FL  33181 |

Counsel for Defendant Ken Detzner:
MOHAMMAD O. JAZIL
mjazil@hgslaw.com
GARY V. PERKO
gperko@hgslaw.com
MALCOLM N. MEANS
mmeans@hgslaw.com
Hopping Green & Sams, P.A.
119 South Monroe Street, Suite #300
Tallahassee, FL  32301


Amicus Curiae for FL State Assoc. of Supervisor of Elections:

| RONALD A. LABASKY | JOHN T. LAVIA, III |
|---|---|
| rlabasky@blawfirm.net | jlavia@gbwlegal.com |
| fsase@bplawfirm.net | rhonda@gbwlegal.com |
| Brewton Plante, P.A. | Gardner, Bist, Bowden, Bust, et al. |
| 215 S. Monroe St., Ste. 825 | 1300 Thomaswood Drive |
| Tallahassee, FL  32301 | Tallahassee, FL  32308 |