# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### GAINESVILLE DIVISION

MARTA VALENTINA RIVERA
MADERA, on behalf of herself
and all others similarly situated,
FAITH IN FLORIDA, HISPANIC FEDERATION,
MI FAMILIA VOTA EDUCATION FUND,
UNIDOSUS, and VAMOS4PR,

     *Plaintiffs*,

v.                                        Case No. 1:18-cv-152-MW/GRJ

LAUREL M. LEE, in her official
capacity as the Florida Secretary
of State, and KIM A. BARTON, in her
official capacity as Alachua County
Supervisor of Elections, on behalf of
herself and similarly situated County
Supervisors of Elections,

     *Defendants*.

_____/

## ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION[1]

This Court has considered, after hearing on May 6, 2019, Plaintiffs' second motion for preliminary injunction. ECF No. 110. The motion is **GRANTED in part**.

---

[1] This Court recognizes that time is of the essence and intended to issue this Order shortly after the May 6 hearing. But this Court had a two-day judicial conference and several hearings that delayed a speedier issuance.

1

This case is about the fundamental right to cast an effective ballot. Voters educated in Puerto Rico bring this suit to enforce the plain provisions of the Voting Rights Act's Section 4(e). This straightforward law has been on the books for 54 years. In this action, this Court is ensuring compliance with Congress's clear directives.

This Court incorporates by reference its previous order granting in part Plaintiffs' first motion for preliminary injunction. *See* ECF Nos. 57 & 59. There, this Court ordered achievable equitable relief under the time constraints of the November 2018 election cycle. Specifically, this Court ordered the Secretary of State to order the supervisors of elections of 32 counties[2] to "make available a facsimile sample ballot in Spanish to voters who fall within the ambit of Section 4(e) of the Voting Rights Act." ECF No. 59, at 26. This Court also ordered Spanish signage and the mailing, publication, or advertising of the Spanish-language sample ballots to the extent the supervisor of elections mails, publishes, or advertises sample ballots. *Id*. In so ordering, this Court determined that Plaintiffs had met their burden of establishing they had a

---

[2] Plaintiffs were not able to identify Puerto Rican populations in 20 counties that conduct English-only elections. At the time of this lawsuit's filing, 15 counties provided official Spanish-language ballots under another provision of the Act, 52 U.S.C. § 10503(b)(2)(A), or, in the case of Collier and Volusia Counties, voluntarily. Since the initiation of this lawsuit, other counties have taken steps to provide official Spanish-language ballots. *See generally* ECF No. 123-1. The 32 counties at issue in this action are: Alachua, Bay, Brevard, Charlotte, Citrus, Clay, Columbia, Duval, Escambia, Flagler, Hernando, Highlands, Indian River, Jackson, Lake, Leon, Levy, Manatee, Marion, Martin, Monroe, Okaloosa, Okeechobee, Pasco, Putnam, St. Johns, St. Lucie, Santa Rosa, Sarasota, Sumter, Taylor, and Wakulla.

substantial likelihood of success on the merits, they would suffer irreparable harm absent an injunction, and an injunction would serve the public interest. The balance of the equities—the timing of the election cycle and the expense of the requested relief on the one hand versus the fundamental right to cast an effective vote on the other hand—shaped this Court's temporary relief.

Plaintiffs now move for a preliminary injunction for broader relief. ECF No. 110; *see also* ECF No. 110, Ex. 6. Additionally, Secretary Lee has filed a notice of rulemaking. ECF No. 114. One rule would "require Florida's supervisors of elections to provide official Spanish language ballots by the 2020 General Election." *Id.* at 2. Another rule would "update the State's official polling place procedures manual" to "address accessibility issues for Spanish-speaking voters." *Id.* The Secretary and the Governor should be lauded for initiating rulemaking designed to bring the state into compliance with Section 4(e) of the Voting Rights Act.

The issue today, however, is what measures this Court must order between now and the effective date of the state's final rule, to ensure that the various jurisdictions comply with Section 4(e). In so stating, this Court acknowledges that the state's final rules may bring it in compliance with the Voting Rights Act. But they may not. What is clear is that the rules are not currently in place and elections will be held between now and then. In the meantime, an order requiring achievable compliance is necessary.

This Court again concludes that Plaintiffs have established a substantial likelihood of success on the merits. The Voting Rights Act of 1965's Section 4(e) prohibits English-only elections for those citizens—yes, *citizens*—educated in Puerto Rico in Spanish.[3] *See Katzenbach v. Morgan*, 384 U.S. 643, 657 (1966); *see also United States v. Berks Cty.*, 250 F. Supp. 2d 525, 535 (E.D. Pa. 2003) (observing how courts "broadly interpret[]" Section 4(e) to prohibit conditioning vote on a voter's English-language abilities). The law is clear. Moreover, Plaintiffs would suffer irreparable harm absent an injunction. Irreparable injury is presumed when "[a] restriction on the fundamental right to vote" is at issue. *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012). The right to vote "encompasses the right to an effective vote." *Puerto Rican Org. for Political Action v. Kusper*, 490 F.2d 575, 580 (7th Cir. 1973). Therefore, absent

---

[3] Section 4(e) in its entirety states:

> (1) Congress hereby declares that to secure the rights under the fourteenth amendment of persons educated in American-flag schools in which the predominant classroom language was other than English, it is necessary to prohibit the States from conditioning the right to vote of such persons on ability to read, write, understand, or interpret any matter in the English language.
> (2) No person who demonstrates that he has successfully completed the sixth primary grade in a public school in, or a private school accredited by, any State or territory, the District of Columbia, or the Commonwealth of Puerto Rico in which the predominant classroom language was other than English, shall be denied the right to vote in any Federal, State, or local election because of his inability to read, write, understand, or interpret any matter in the English language, except that in States in which State law provides that a different level of education is presumptive of literacy, he shall demonstrate that he has successfully completed an equivalent level of education in a public school in, or a private school accredited by, any State or territory, the District of Columbia, or the Commonwealth of Puerto Rico in which the predominant classroom language was other than English.

52 U.S.C. § 10303(e).

an injunction, Plaintiffs would lack the means to cast an effective vote between now and the planned rulemaking. The balance of the equities favors ordering additional measures to ensure compliance with the Voting Rights Act. This Court outlines these measures below. Finally, the public interest is served by an injunction. "Ordering Defendants to conduct elections in compliance with the Voting Rights Act so that all citizens may participate equally in the electoral process serves the public interest by reinforcing the core principles of our democracy." *Berks Cty.*, 250 F. Supp. at 541.

It should be noted that the Secretary is the proper party before this Court. This is an issue largely put to rest. *Democratic Exec. Comm. v. Lee*, 915 F.3d 1312, 1318 (11th Cir. 2019). But the Secretary argues that municipal elections may be outside the scope of her power because some municipalities run their elections autonomously from the county supervisor of elections. *See* ECF No. 123, at 9–10. This argument is not persuasive because under Florida law the Secretary—the state's "chief election officer," Section 97.012, Florida Statutes—*must* have "general supervision and administration of the elections laws," Section 15.13, Florida Statutes, including the duty to "[o]btain and maintain uniformity in the interpretation and implementation of the elections laws." Fla. Stat. § 97.012(1). Even more, the Secretary has the power to "enforce the performance of any duties of a county supervisor *or any official* performing" election-administration duties. Fla. Stat. § 97.012(14). In short,

the Secretary maintains ample power over municipal elections, at least with regards to the issue here—compliance with federal law.

At the hearing, Plaintiffs conceded that no record evidence exists of a citizen who falls within the ambit of Section 4(e) but who was unable to cast an effective ballot under the protocols established by this Court's prior preliminary injunction.[4] While this may be evidence that this Court's prior preliminary injunction was not inadequate, this lack of evidence could also reveal that this Court's measures did not go far enough. For example, perhaps the availability of Spanish-language sample ballots was not known to citizens who fell within the ambit of Section 4(e) because this Court did not order proactive advertising or marketing regarding the sample ballots.

This Court again emphasizes that it is ordering compliance with the plain language of the Voting Rights Act of 1965. The Secretary concedes that compliance with Section 4(e) of the Act is not optional. In fact, the Secretary agrees that this Court's previous preliminary injunction "should remain in effect at least until the state rulemaking is complete." ECF No. 123, at 3. What's more, in some ways, the Secretary's proposed rules go *further* than Plaintiffs' requested relief because one of the rules appears to require that *all*

---

[4] One possible exception was Duval County's lack of total compliance with this Court's previous preliminary injunction order to provide facsimile sample ballots at polling places, which necessitated an emergency motion. *See* ECF Nos. 77–79. Even then, however, Plaintiffs cannot confirm that a citizen was denied his or her right to vote.

6

ballots be bilingual (or multilingual, as the case may be in some counties). *See* ECF No. 120, Ex. 1 ("Ballots shall be translated into Spanish and where required by law or court order, into other languages."). Plaintiffs, after all, do not seek Spanish-language election materials in 20 counties where they were unable to locate Spanish-speaking Puerto Rican–educated citizens.

This Court is again entering an injunction mindful of its equitable power to balance the fundamental right at stake against the time, expense, and other concerns raised by the state and the many supervisors of elections. "Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017). The Eleventh Circuit has recently reiterated that it is "axiomatic that a district court 'need not grant the total relief sought by the applicant but may mold its decree to meet the exigencies of the particular case.'" *Democratic Exec. Comm.*, 915 F.3d at 1327–28 (quoting *Trump*, 137 S. Ct. at 2087). It is crystal clear from binding authority that crafting appropriate remedies is within a district court's equitable powers, even if they do not track entirely with what Plaintiffs seek.

Compliance with this Order is not optional. While the vast majority of supervisors of election are upstanding professionals who follow the law and court orders, do difficult but necessary work under tight timelines, and are

7

often subjects of multiple bouts of litigation, there may be some who selectively interpret parts of this Court's orders or otherwise avoid compliance. This Court will not hesitate to use every tool the law provides to enforce this Order. *See* Fed. R. Civ. P. 65(d)(2)(C) (binding "other persons who are in active concert or participation" with the parties and the parties' officers, agents, and employees); *see also* 28 U.S.C. §1651(a) (granting courts the authority to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law").

It bears noting that this Court's Order is not a bolt out of the blue. After all, Section 4(e) has been the law of the land since 1965 and supervisors of elections should have been complying with the law for more than 50 years without court intervention. It's simple. The best way to avoid litigation and stay out the courts is to follow the law.

As noted before, the Governor and Secretary should be lauded for initiating a rulemaking process to ensure compliance with this decades-old law. This Order is not designed to supplant the future rules. But ongoing court intervention may be necessary. As mentioned above, the state's final rules may not fully comply with Section 4(e). The rules' final form, at this point, is pure conjecture. And so, without the pressing time constraints that limited this Court's prior preliminary injunction, further relief is necessary to ensure meaningful compliance with federal law. In crafting relief, this Court

considered the helpful and thorough affidavits of many supervisors of elections. ECF No. 123-1. Accordingly,

**IT IS ORDERED:**

1. This Court's previous order on preliminary injunction including its findings of fact and conclusions of law, ECF No. 59, is incorporated into this preliminary injunction.

2. Plaintiffs' renewed motion for preliminary injunction, ECF No. 110, is **GRANTED in part**.

3. Consistent with the Secretary of State's responsibility to "provide written direction . . . to the supervisors of elections on the performance of their official duties with respect to . . . rules adopted by the Department of State," Section 97.012(16), Florida Statutes, and the Department of State's rule that "[b]allots shall be translated into other languages that are required by law or court order," Fla. Admin. Code R. 1S-2.032, and inasmuch as this Order delineates such requirements, the Secretary shall provide written direction to the supervisor of elections in the 32 counties at issue, stating:

   a. All requirements ordered under Paragraph 3 shall be in place before voting related to the March 17, 2020 presidential primary election, including early voting and vote-by-mail

   b. On or before the earliest date ballots are required to be created for voting related to the March 17, 2020 presidential primary

election,[5] the supervisor of elections shall have official Spanish-language ballots available on a (1) unilingual ballot; (2) bi- or multilingual ballot; and/or (3) an electronic Voter Assistance Terminal, such as the Automark.[6]

c. The supervisor of elections shall create a toll-free, county-specific, Spanish-language hotline[7] with at least one bilingual employee for the purpose of translating or otherwise assisting Spanish-language voters during all early voting hours, hours when polls are open, and all hours during which voters can cure deficiencies with absentee or provisional ballots following election days, and all business hours on other days. Additionally, the Secretary shall direct supervisors of elections to visibly display at each polling place the availability of Spanish-language hotline assistance, including the county's Spanish-language hotline number and the state's Spanish-language hotline number.

d. The supervisor of election shall provide in Spanish all official election-related written and electronic materials, including, but not limited to, ballots (as described in Subsection (b), *supra*), absentee and early voting applications and envelopes, provisional ballot envelopes and certifications, voter

---

[5] According to 26 of the 29 declarations of supervisors of elections, Spanish-language official ballots can be provided in those counties by this date. *See generally* ECF No. 123-1; *see also* ECF No. 126, at 5 n.3 & 6 n.5. Only three (Brevard, Columbia, and Santa Rosa) did not provide a timeline for when official Spanish-language ballots would be available. None of the responding supervisors stated they could *not* provide an official Spanish-language ballot by this time.

[6] The Automark provides Spanish translations of ballots and is already in place in at least one county, Duval County. ECF No. 123-1, at 37.

[7] According to the declarations of 29 supervisors of elections, the overwhelming majority indicated that a Spanish-language hotline (or functional equivalent) was already in place (Alachua, Clay, Duval, Escambia, Highland, Indian River, Leon, Okaloosa, Pasco, St. Lucie), is planned (Hernando), or is possible (Bay, Charlotte, Citrus, Levy, Marion, Martin, Monroe, Putnam, Santa Rosa, Sarasota, St. Johns, Sumter). Only five counties (Columbia, Jackson, Okeechobee, Taylor, Wakulla) expressed concerns over the cost and bilingual staffing limitations for the service. *See generally* ECF No. 123-1. Even so, the Secretary conceded at the hearing that "[w]e think the phone hotlines are an appropriate stopgap measure." ECF No. 128, at 36; *see also id.* at 39. Therefore, at a bare minimum, the five counties that expressed cost and staffing limitations for a Spanish-language hotline must create and advertise at polling places a telephone line that patches them to the state's Spanish-language hotline. It goes without saying this hotline measure is far less onerous than requiring bilingual poll workers.

registration cards and applications, voting instructions, voter information guides and pamphlets, notifications of elections and polling place changes, polling place signage, and all information available on the supervisors' websites. The existence of these materials shall be made known at polling places and the supervisors of elections' offices with prominent displays. Signage shall be prominently posted and explain in English and Spanish how voters can obtain Spanish-language assistance.

e. The supervisor of elections shall provide in Spanish all notifications, announcements, and informational materials about all stages of the electoral process, including materials concerning the opportunity to register, voter registration deadlines, the times, places, and subject matters of the elections, the absentee and early voting processes, offices up for election, candidates who have qualified, and local issues or referenda and announcements applicable to elections in the counties.

f. The supervisor of elections shall provide a copy of the Spanish-English Election Terms Glossary prepared by the U.S. Election Assistance Commission at each polling place.

g. The supervisor of elections shall provide Spanish-language information on websites that is readily accessible through prominent and identifiable Spanish-language links on each website. Smaller counties with less means and resources to fully translate their websites may provide a Spanish-language link, prominently displaced, to the state's election-information website.

h. The supervisor of elections shall provide information in Spanish on websites and at each polling place that any voter who requires assistance to vote may bring a helper to assist them.

i. To the extent practicable, the supervisor of elections shall recruit, hire, train, and assign bilingual poll workers who are able to understand speak, write, and read English and Spanish fluently and can provide effective translation assistance to Spanish-speaking voters at the polls on election days, at early

11

voting locations, and at locations where voters can cure deficiencies with absentee or provisional ballots following election days.[8] Supervisors shall continue to make good-faith recruiting efforts to provide bilingual assistance, particularly for the benefit of those polling locations with a higher proportion of individuals who fall under the ambit of Section 4(e).

    j. The supervisor of elections shall train all poll officials and other election personnel regarding the requirements of Section 4(e) of the Voting Rights Act, including the legal obligation and means to make effective Spanish-language assistance and materials available to voters.

    k. All requirements ordered under Paragraph 3 shall be in place before voting related to the March 17, 2020 presidential primary election, including early voting and vote-by-mail.

4. Consistent with the Secretary of State's responsibility to "provide written direction . . . to the supervisors of elections on the performance of their official duties with respect to . . . rules adopted by the Department of State," Section 97.012(16), Florida Statutes, and the Department of State's rule that "[b]allots shall be translated into other languages that are required by law or court order," Fla. Admin. Code R. 1S-2.032, the Secretary shall provide written direction to any supervisor of elections among the 32 counties that will run a

---

[8] This Court recognizes the difficulties especially prevalent in recruiting bilingual poll workers. *See, e.g.*, ECF No. 123-1, at 15–16 (Brevard County's supervisor discussing recruiting difficulties). This Court also recognizes the great lengths to which many counties are going to recruit bilingual poll workers. *See, e.g.*, *id.* at 81 (Okaloosa County's detailed recruiting efforts through Spanish-language publications and at Latin American festivals). Accordingly, it only orders bilingual poll workers to the extent practicable given each county's circumstances.

municipal election between the date of this Order through March 16, 2020,[9] stating:

   a. For any elections held between the date of this Order and through March 16, 2020, the supervisor of elections shall make available a facsimile sample ballot in Spanish to voters who fall within the ambit of Section 4(e) of the Voting Rights Act. The sample ballots shall have matching size, information, layout, placement, and fonts as an official ballot does. The sample ballots need not be completely identical; for example, the sample ballot need not contain bar codes or other markings that official ballots may have or be printed on the same stock, etc.

   b. To render this a meaningful remedy, the supervisor of elections shall publish the same facsimile sample ballot on their website with Spanish-language directions. To the extent the English-language ballots are mailed, published, or advertised, such sample ballots must also include the sample Spanish-language ballot.

   c. The supervisor of elections shall also provide signage in Spanish at polling places making voters aware of such sample ballots.

5. Pursuant to the Secretary's "general supervision and administration of the elections laws," Section 15.13, Florida Statutes, and the Secretary's authority to "[o]btain and maintain uniformity in the interpretation and implementation of the elections laws," Section

---

[9] This Court makes the distinction here and in Paragraph 5 between those supervisors of elections that run or administer municipal elections and those that assist. For example, the Alachua County Supervisor of Elections "administer[s] the City of Gainesville elections by contract, but do[es] not administer the elections for any other municipalities, merely providing voter lists and requested support services." ECF No. 123-1, at 3. According to the declarations of the 29 supervisors of elections, a supervisor's authority over municipal elections varies from county to county and sometimes even within a county, such as the case of Alachua County.

97.012(1), Florida Statutes, and pursuant to Fed. R. Civ. P. 65(d)(2)(C), which allows an injunction to bind "other persons who are in active concert or participation" with the parties, the Secretary shall provide a separate letter to any municipality holding an election in which the supervisor of elections merely assists—as opposed to runs[10]—in the running of that election, stating:

   a. For any elections held between the date of this Order and through March 16, 2020, the municipality shall make available a facsimile sample ballot in Spanish to voters who fall within the ambit of Section 4(e) of the Voting Rights Act. The sample ballots shall have matching size, information, layout, placement, and fonts as an official ballot does. The sample ballots need not be completely identical; for example, the sample ballot need not contain bar codes or other markings that official ballots may have or be printed on the same stock, etc.

   b. To render this a meaningful remedy, the municipality shall publish the same facsimile sample ballot on their website with Spanish-language directions. To the extent the English-language ballots are mailed, published, or advertised, such sample ballots must also include the sample Spanish-language ballot.

   c. The municipality shall also provide signage in Spanish at polling places making voters aware of such sample ballots.

6. The Secretary shall file a notice of compliance in this Court within three (3) days of this Order. The Secretary shall make and maintain written records of all actions pursuant to this Order sufficient to

---

[10] *See supra* at 13, n.9.

document compliance with all requirements of this Order. On or before August 1, 2019, and on the first of every month thereafter, the Secretary shall file a notice of compliance in this Court documenting all actions taken pursuant to this Order.

7. Pursuant to the Secretary's power to "provide written direction . . . to the supervisors of elections on the performance of their official duties with respect to the Florida Election Code or rules adopted by the Department of State," Section 97.012(16), Florida Statutes, and the Secretary's duty to "[a]ctively seek out and collect the data and statistics necessary to knowledgably scrutinize the effectiveness of election laws," Section 97.012(3), Florida Statutes, the Secretary shall, within 30 days of an election, collect from each of the 32 supervisors of elections information on (1) what specific steps they took to comply with Section 4(e) of the Voting Rights Act and this Order; (2) how many individuals requested Spanish-language assistance in the form of sample ballot requests, in-person assistance, hotline calls, or other forms of aid; (3) how many individual people accessed the Spanish-language website; and (4) any additional relevant information.[11] The Secretary shall provide this information

---

[11] This Court is mindful that one-size-fits-all relief is difficult for some counties. The purpose of this information gathering is to collect meaningful facts moving forward for future relief.

to this Court within three (3) days of receiving this information from the supervisors.

8. The Secretary shall attach this Order in its directives to the 32 supervisors of elections in the 32 counties.

9. The Secretary shall attach this Order in its directives to the municipalities the Secretary is ordered to contact pursuant to Subsection 5, *supra* at 13–14.

10. Nothing in this Order shall be construed to limit the Secretary or supervisors of elections or municipalities from offering *more* relief. In other words, this Court is ordering a floor to ensure meaningful compliance with Section 4(e) rather than a ceiling.

11. Defendant Lee's motion for abeyance, ECF No. 114, is **GRANTED**. This case is stayed until the rulemaking process is complete or a party moves to lift the stay and this Court so orders.

**SO ORDERED on May 10, 2019.**

                                              <u>s/Mark E. Walker</u>
                                              **Chief United States District Judge**