IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

**MARTA VALENTINA RIVERA
MADERA, et al.,**

    *Plaintiffs*,

v.                                                    CASE NO.: 1:18cv152-MW/GRJ

**LAUREL M. LEE, etc., et al.,**

    *Defendants*.

_____/

**ORDER DISMISSING CASE IN PART
AND REQUIRING PARTIES TO FILE PROPOSED MODIFIED
<u>PRELIMINARY INJUNCTION ORDER</u>**

Following the issuance of *Jacobson v. Florida Secretary of State*, 957 F.3d 1193 (11th Cir. 2020), this Court ordered supplemental briefing as to whether Plaintiffs had standing to sue Defendant Lee. ECF No. 162. Having considered Defendant Lee's brief, ECF No. 163, and Plaintiffs' response, ECF No. 165, this Court concludes Plaintiffs lack standing to sue Defendant Lee and this case must therefore be dismissed without prejudice as to Defendant Lee.

    Plaintiffs' arguments in favor of standing as to Defendant Lee primarily rest on Defendant Lee's general authority and responsibility to implement election laws, obtain uniformity in Florida's elections, and issue directives to Florida's several

supervisors of elections, who are elected county officials. This is, however, the precise rationale the *Jacobson* court rejected as insufficient. *See* 957 F.3d at 1207–09 (holding the Florida Secretary of State's position as Florida's chief election officer, charged with general supervision and administration of election laws, was insufficient to establish standing in lawsuit seeking to void Florida's statewide ballot order statute). Applying the Eleventh Circuit's reasoning in *Jacobson* to this case, Defendant Lee no more controls the provision of Spanish-language ballots and election materials and assistance the supervisors of elections provide any more than she controls the order of the candidates on the ballots those supervisors print. And although Plaintiffs are correct that Defendant Lee can issue guidance and directives to the supervisors of elections concerning the requirements of this Court's injunction, the fact that Defendant Lee must resort to separate judicial process to compel the supervisors of elections to comply with those directives "underscores her lack of authority over them." *Id.* at 1207–08.

Plaintiffs' rebuttal based on *Bennett v. Spear*, 520 U.S. 154 (1997), fails because the effect of the guidance at issue in that case was materially different from the effect of the guidance Defendant Lee issues to Florida's supervisors of elections. The guidance at issue in *Bennett* was a "Biological Opinion" prepared by the United States Fish and Wildlife Service (FWS) pursuant to the requirements of the Endangered Species Act of 1973 (ESA). *Id.* at 157. When the Department of the

Interior determined one of its water management programs on the Klamath River (for convenience, "the Klamath Project") could impact protected species, it sought— as required by the ESA—an analysis from FWS of the possible impact. *Id.* at 158. FWS issued its official evaluation, the Biological Opinion, which concluded the proposed operation of the Klamath Project would indeed impact the protected species in question and identified alternatives to avoid those impacts. *Id.* at 159. Two of Oregon's irrigation districts (and two ranches within those districts) then sued both FWS and the Secretary of the Interior alleging violations of the ESA and the Administrative Procedure Act. *Id.* at 159–160. In part, FWS argued the plaintiffs failed to satisfy the Article III requirements for standing because their injuries were not fairly traceable to the Biological Opinion, nor were they redressable by a favorable judicial ruling against FWS because the Department of the Interior retained the discretion to determine its course of action, the Biological Opinion notwithstanding. *Id.* 168–69. Any injury to the plaintiffs would come, FWS argued, from the decision about how much water to allocate to them, not from the Biological Opinion's determination that such allocations would affect protected species. *Id.* In plain language, FWS argued the Biological Opinion was not binding on the Department of the Interior and did not itself make a final decision regarding anyone's rights, and therefore a judicial order vacating the Biological Opinion would not redress the plaintiffs' injuries.

The Supreme Court unanimously rejected this argument, explaining that, although the Biological Opinion was theoretically an advisory document, "in reality it has a powerful coercive effect" because it "alters the legal regime to which the action agency is subject." *Id.* at 169. The Biological Opinion's determination changed the legal landscape of the planned operation of the Klamath Project because, if the Department of the Interior ignored the Biological Opinion, it (and its employees) could be "subject to substantial civil and criminal penalties, including imprisonment." *Id.* at 170. The Court concluded that, because setting aside the Biological Opinion would make it likely the challenged water level restrictions would not be imposed, the plaintiffs satisfied their "relatively modest" burden to establish standing. *Id.* at 171.

The situation presented in this case is quite different. Here, the relief Plaintiffs seek is ultimately actions taken by the several supervisors of elections—providing Spanish-language ballots, election materials, and election assistance in the relevant counties. As far as Plaintiffs' relief is concerned, Defendant Lee's role in this case is to require the supervisors of elections to take those necessary actions pursuant to her powers granted under Florida law. Put differently, Plaintiffs ask this Court to require Defendant Lee to require the supervisors of elections to act. This may have benefits in terms of uniformity and efficiency—both important considerations in

4

election law—but just because a solution is good does not mean it is correct.[1] Instead of ordering Defendant Lee to order the supervisors of elections to act, *Jacobson* requires this Court to order the supervisors of elections to act, without the intermediary of Defendant Lee. To the extent Plaintiffs ask this Court to require Defendant Lee to require the supervisors of elections to take certain actions, Plaintiffs lack standing to seek that relief.

To illustrate the difference, consider what would happen if the supervisor of election in one of the relevant counties failed to provide, for example, early-voting applications translated into Spanish. This Court's preliminary injunction does not require that supervisor of elections to provide those translated applications. Instead, it requires Defendant Lee to direct the supervisors of elections to provide those translated applications. The supervisor of election's hypothetical failure to provide them would violate Defendant Lee's directive, but not this Court's order. Under *Jacobson*, Plaintiff's injuries are therefore neither traceable nor redressable by an order directed to Defendant Lee.

Importantly, however, *Jacobson* does not stand for the proposition that the Florida Secretary of State is *never* a proper party to a lawsuit challenging Florida's

---

[1] In stating that the solution is incorrect, this Court does not imply that it agrees with the Eleventh's Circuit reasoning in *Jacobson*. This Court clearly does not. But while this Court may disagree with the Eleventh Circuit's ruling in *Jacobson*, it "*may not*, *cannot*, and *does not* have the right to disagree with that ruling for the purpose of rejecting it." *See ABB Power T & D Co., Inc. v. Gothaer Versicherungsbank VVAG*, 939 F. Supp. 1558, 1574 n.7 (S.D. Fla. 1996).

5

election laws. For example, the Florida Secretary of State enforces Florida's ballot access provisions. *See Indep. Party of Fla. v. Sec'y, State of Fla.*, No. 20-12107, --- F.3d ----, 2020 WL 4435080, at *2 (11th Cir. Aug. 3, 2020) (citing Fla. Stat. §§ 20.10(1), 103.012(4)(a)–(b)). The Florida Secretary of State would therefore be a proper party to a suit claiming an injury traceable to the ballot access statutes because the injury "could be redressed by an injunction forbidding the Secretary to deny the party access to the ballot based on the challenged provisions." *See id.* (citing *Jacobson*, 957 F.3d at 1208–09). But where, as here, the plaintiffs' injuries are caused to the failure of county supervisors of elections to comply with their duties under federal law, those injuries are neither traceable nor redressable by the Florida Secretary of State.

For these reasons, this case is **DISMISSED without prejudice** as to Defendant Lee.

Consequently, only Defendant Barton remains as a defendant. It is therefore necessary to modify this Court's preliminary injunction to reflect the new status quo. Accordingly, **on or before August 21, 2020**, the parties shall meet and confer and submit a proposed modified preliminary injunction order. If the parties are unable to reach an agreement, the parties shall file their proposed orders separately.[2]

---

[2] Of course, this Court will consider any additional motions regarding class certification or mootness if filed or resubmitted by the appropriate party.

For these reasons,

**IT IS ORDERED**:

1. Plaintiffs' claims against Defendant Lee are **DISMISSED without prejudice** for lack of standing.

2. **On or before August 21, 2020**, the parties shall meet and confer and submit—either jointly or separately—a proposed modified injunction order.

**SO ORDERED on August 7, 2020.**

                                        **s/Mark E. Walker**
                                        **Chief United States District Judge**