IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

MARTA VALENTINA RIVERA
MADERA, on behalf of herself and all
others similarly situated; FAITH IN
FLORIDA, HISPANIC FEDERATION,
MI FAMILIA VOTA EDUCATION
FUND, UNIDOSUS, and VAMOS4PR,

        Plaintiffs,

v.

KIM A. BARTON, in her official
capacity as Alachua County Supervisor
of Elections, on behalf of herself and
similarly-situated County Supervisors
of Elections,

        Defendants.
_____/

Case No. 1:18-cv-152-MW/GRJ

### DEFENDANT KIM A. BARTON'S MOTION TO DISSOLVE PRELIMINARY INJUNCTIONS AND DISMISS CASE

Defendant KIM A. BARTON (Supervisor) moves this Honorable Court to dissolve the Preliminary Injunctions entered by this Court, most recently on May 10th 2019, to the extent they affect this Defendant, and in support thereof would say as follows:

The history of this matter is well known to the Court. In short, Plaintiffs sought relief from the Court based upon certain alleged deficiencies in the procedures provided for Spanish language speakers who were educated in Puerto Rico and who,

therefore, are protected under the Voting Rights Act (Voters). On September 7, 2018, after a hearing on the matter, the Court entered a Preliminary Injunction against the Secretary of State, requiring him to take certain actions, among which were instructing the affected Supervisors to take specific action to ensure that there was Spanish language support for the voters. In addition to the instructions to the Secretary, the Court held "It is GRANTED insofar as the Counties shall provide signage, sample facsimile ballots, and notice in Spanish on their websites." ECF 57 p 27 paragraph 5.

On May 10, 2019 the Court entered an interim order. The issue to be dealt with in that order was, in the Court's words: "what measures this Court must order between now and the effective date of the state's final rule, to ensure that the various jurisdictions comply with Section 4(e)" of the Voting Rights Act. ECF 131 p. 3. At that time, the Court stated that the proposed rules might or might not bring the State into compliance with the Voting Rights Act, but that the rules were not yet in place.

The Court has made it very clear that its interpretation of the Voting Rights Act requires the Supervisor to provide an election in both English and Spanish, to fully serve those citizens educated in Spanish in Puerto Rico. Specifically, the Court "again emphasize(d) that it is ordering compliance with the plain language of the Voting Rights Act of 1965."

The Court maintained the Order and findings in ECF 59. The Court required the Supervisors to provide certain additional relief pending the development of the final rules.

Those rules have now been promulgated by the Secretary of State and, as set forth in her Declaration, (Exhibit 1), Supervisor Barton currently follows the requirements of the new rules and the requirements of the Court's preliminary injunctions. She has also made the commitment that she will continue to provide the assistance to Spanish language voters as set forth in the rules and Order. To this end, she has made compliance with these requirements part of her budget for the next fiscal year, and intends to do so into the future. She is currently prepared to provide that assistance for the upcoming general election, and for all elections thereafter that her office administers. However, unlike the Secretary of State, she has no authority over those municipal corporations that operate their own elections in accordance with their charter authority under Florida law. Even so, she administers the election process for the vast majority of voters in Alachua County.

If the requirements of the Voting Rights Act for citizens born in Puerto Rico were specifically enumerated, this case would not have been necessary. Early on, the Court established a clear, enumerated standard of what it deemed to be required, and Alachua County has continued to comply with those standards. In addition to the Court's orders, there is now law in Florida on the subject that does enumerate

3

which actions must be taken. These standards have now been set and defined. Prior to this, Supervisors were left to make decisions without clearly discernable standards or guidelines about what level of services were required to comply with the Voting Rights Act.

Defendant admits that she "bears a formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Doe v. Wooten,* 747 F. 3d 1317, 1322 (11th Cir 2014). At the time this lawsuit was filed, there was no clear law on what specific action must be taken to comply with Section 4(e). By the time of the first hearing, Defendant Barton had indicated in her declaration the actions she had taken, and the actions she was committing to take for the November 2018 Election. ECF 41-1 at paragraph 9. The main issue at that time was her ability to provide a Spanish Language ballot, particularly with such short notice before the November 2018 Election. Since that time, she has provided a Spanish Language ballot for subsequent elections and, as it is now the law in Florida, will continue to do so, even had she not committed to do it before. (Exhibit 1, Declaration of K. Barton).  Of the relief sought by Plaintiffs, the provision of a Spanish Language ballot is the single most expensive to provide. Since it is now required under Florida law and has been included in her budget, there is no reason to believe the Supervisor will fail to provide a Spanish Language ballot. As for other forms of Spanish Language assistance, they are more easily included in

her budget and operations, and have continually been provided by the Supervisor since the outset of this case. To date, there is no indication that any individual voter, group of voters, or other entity not involved in this litigation has requested that the Supervisor do more to ensure an accessible election for this voter protected under Section 4(e).

Plaintiff Rivera's Declaration, ECF 25, dated August 21, 2018, does not state any fact which shows that Supervisor Barton failed to provide her the support she required. Her one allegation has to do with the "DMV" which is not under the control of the Supervisor of Elections. There is no other individual plaintiff seeking relief against Supervisor Barton. There are no facts set forth showing that Plaintiff Rivera has been injured by any actions of Defendant Barton. Her declaration contained only concerns, and her involvement in the case appears calculated to accomplish nothing more than bring Supervisor Barton into the case as a Defendant. Without more she does not reach Article III standing.

The remainder of the plaintiffs are organizational plaintiffs which have only alleged vague general impacts on their operations, and do not specifically mention operations in Alachua County or how the acts of Supervisor Barton, or her failure to act, has impaired their operations. They have only alleged general potential injuries and have not pled any facts that show actual injury or even that they would sustain

5

any potential injury as the result of acts in Alachua County. Defendant Barton raised this issue of standing previously in ECF-41 p 5, but the motion was denied.

Finally, it should be noted that in this case Supervisor Barton did not defend on whether the Voting Rights Act applied in Alachua County. The main issue was one of timing once the lawsuit was brought. Prior to the lawsuit being brought, she was under the belief that there were alternative ways to meet her obligations. The main reason for the preliminary injunction was to seek action by the Secretary of State who was, at that time, viewed as a proper defendant by all plaintiffs. The dismissal of the Secretary and a lack of any complaint of injury by Plaintiff Rivera, means that there is no current justiciable issue remaining between the Plaintiff and Defendant Barton. Therefore, not only should the injunction be dissolved but the matter dismissed as well. Any claim which Plaintiff Rivera can bring at this point is limited to whether or not Supervisor Barton's actions result in any injury to her or do not otherwise meet the requirements of the Voting Rights Act.

Plaintiff's reliance on *National Broad. Co. v, Commc'ns Workers of Am. AFL-CIO,* 860 F. Wd 1022, (11th Cir. 1988) is misplaced. The Court stated there were three exceptions to the mootness doctrine:

"Courts have agreed to hear otherwise moot cases in three instances: (1) "where the issues are capable of repetition, yet evading review"; (2) "where an appellant has taken all steps necessary to perfect the appeal and to preserve the status

quo before the dispute becomes moot"; and (3) "where the trial court's order will have possible collateral legal consequences." *B & B Chemical Co. v. United States E.P.A.*, 806 F.2d 987, 990 (11th Cir. 1986).

The injunction had expired and mootness was raised on appeal. The issue of the potential for repetition in that case was the potential for labor unrest between network and labor unions and the annual CWA convention every year. Here the sole issue is the provision of what the Court has ordered, all of which Supervisor Barton has agreed to provide in a filing with this Court. The provision of the ballot is now a legal requirement under Florida law, so any change from her current position would be subject to action by the Secretary of State. This is more than just compliance with the court Order *pendent lite*. Plaintiff seeks to litigate over the sufficiency of the rules, but as Supervisor Barton did not draft the rules, she is not in a position to defend them. She is only in a position to defend the action she is taking.

A motion to dissolve an injunction can be entertained when there has been a change in policy or position since the initial injunction. *Karnoski v. Trump,* 926 F. 3d 1180 (9th Cir, 2018). Here, Alachua County has fully complied with the injunctions, even meeting some of the requirements before they were imposed, and has no plan on changing its position under the unique circumstances of Alachua County. Additionally Rules regarding Spanish Language balloting have been issued by the Secretary of State. Supervisor Barton would remind the Court that shortly

7

after the first hearing on the injunction, Governor DeSantis indicated he would change the voting system in Florida to provide Spanish language balloting, and so no appeal was taken from the prior injunctions.

At this point in the case, even if the Court declines to find that the issue is moot and enter a dismissal, the Plaintiffs are, at most, entitled to a declaration of whether the rules as they exist at present meet the requirements of the Voting Rights Act, and whether Supervisor Barton, in attempting to meet those requirements, has taken sufficient action for her particular jurisdiction. Given the commitments made by the Supervisor, her willing compliance with the Orders of this Court, as well as the promulgation of rules addressing the issues of this case, an ongoing injunction is no longer necessary.

After the Court's ruling finding that the Secretary of State was not a proper party in this matter based upon the decision in *Jacobson v. Florida Secretary of State,* 957 F 3d 1193 (11th Cir 2020), a similar issue arose in *County of Volusia v. DeSantis*, No. 1D19-1089, 45 Fla. L. Weekly D 1956, (Fla. 1st DCA Aug. 17, 2020). In this decision, the First District held that the Secretary of State was a proper party because of the Secretary's role as the chief election officer of the state. Sec 97.012(1), Fla Stat. (2018). The First District Court of Appeal held that the Secretary has the "obligation and the power to bring and maintain such actions at law or in equity by mandamus or injunction to enforce the performance of any duties of a

county supervisor of elections" Sec 97.012(14), Fla. Stat. This decision was based wholly on Florida law, and no Federal precedents were cited or relied upon. The Court was correct in its original decision that the proper party in this case is the Secretary of State under Florida law. This case was not cited in the recent order on rehearing issued in *Jacobson* on September 3, 2020. The Court in *Volusia* specifically held that the Secretary's authority to seek a writ of mandamus against the Supervisors established her authority. This was precisely the argument made by the dissent in *Jacobson*. So, while the Secretary's argument swayed the opinion of the 11th Circuit applying Federal law, it did not sway the decision of the First District Court of Appeal. The decision in *Volusia* supports the dissolution of the preliminary injunction because it once again provides a mechanism through which Plaintiffs, or another interested party, can easily enforce these new requirements for Spanish Language assistance, including ballots, on a statewide level instead of seeking relief from the Supervisor directly.

## **CONCLUSION**

For the reasons stated above, there has been sufficient change in the facts on the ground in Alachua County and the position of Supervisor Barton. The Plaintiff has not raised any showing of issues or injury raised since the filing of this matter. Therefore, the matters raised against Supervisor Barton have become moot, the injunction should be dissolved and the case dismissed.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that pursuant to Northern District of Florida Local Rule 5.1(F), each party on whom this document is to be served is represented by an attorney who will be served through this Court's CM/ECF portal upon filing this 29th day of September, 2020.

        ALACHUA COUNTY ATTORNEY'S OFFICE

By:   */s/ Robert C. Swain*
     Robert C. Swain
     Deputy County Attorney
     Florida Bar No. 366961
     */s/ Corbin F. Hanson*
     Corbin F. Hanson
     Senior Assistant County Attorney
     Florida Bar No. 99435
     12 Southeast 1st Street
     Gainesville, Florida 32601
     Phone: (352) 374-5218/Fax: 374-5216
     bswain@alachuacounty.us
     cfhanson@alachuacounty.us
     CAO@alachuacounty.us
     Counsel for Kim A. Barton, in her official capacity as Alachua County Supervisor of Elections