## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

MARTA VALENTINA RIVERA
MADERA, etc., *et al*.,

      Plaintiffs,

                               Case No. 1:18-cv-00152-MW-GRJ

v.

KIM A. BARTON, in her official
capacity as Alachua County Supervisor
of Elections, etc.,

      Defendants.

_____/

### EIGHT SUPERVISORS OF ELECTIONS' AMICUS
### CURIAE BRIEF IN OPPOSITION TO CLASS CERTIFICATION

      Pursuant to this Court's invitation, the Supervisors of Elections for Charlotte,

Escambia, Indian River, Lake, Manatee, Marion, Monroe, and Pasco Counties

respectfully present this amicus curiae brief "addressing the issue of whether this

Court should certify a defendant class." ECF No. 172 at 3.

## INTRODUCTION

Plaintiffs ask this Court to certify a defendant class of only 32 Supervisors of Elections and to appoint as class representative a Supervisor who has declared that she will provide the requested relief and will not actively defend against Plaintiffs' claims. What's more, Plaintiffs seek class treatment even though they challenge the disparate local practices of 32 Supervisors, rather than a uniform statewide policy. Because the 32 Supervisors make their own, county-level decisions about language-assistance services such as Spanish-language websites, hotlines, and social-media posts and the recruitment of Spanish-speaking poll workers, Plaintiffs cannot prove their claims through classwide evidence, but instead must present county-by-county evidence to demonstrate the liability of each class member and, to the extent necessary, to enable the Court to frame properly tailored, county-specific remedies.[1]

---

[1] This is not to say that the Supervisors who file this brief agree with Plaintiffs' interpretation of section 4(e). They do not. At the appropriate time, these Supervisors intend to show that, when Congress intends to prohibit English-only elections and mandate bilingual elections, it says so clearly and explicitly, and carefully identifies the jurisdictions to which its mandate applies. *See* 52 U.S.C. §§ 10303(f)(4), 10503. Section 4(e) was enacted to serve a narrower purpose: to provide voters educated in Puerto Rico an alternative means to satisfy state-law English literacy requirements. Enacted in 1965 before literacy tests were outlawed, section 4(e) required States that imposed English literacy requirements to accept, as sufficient proof of literacy, evidence that a voter had completed the sixth grade in an American-flag school that provided instruction predominantly in a language other than English. For purposes of this brief, however, the Supervisors accept arguendo Plaintiffs' interpretation of section 4(e) and discuss the evidence that would be required to prove a section 4(e) claim under that theory.

This Court correctly denied class certification once before, ECF No. 107, and it should do so again, for the following reasons.

First, the proposed class of 32 Supervisors is not so numerous that joinder is impracticable. This Court recently presided over consolidated cases that joined all 67 Supervisors and all 67 county canvassing boards as defendants. The joinder of 31 additional local officials who can easily be served is not even close to impracticable.

Second, because Plaintiffs challenge the local practices of 32 Supervisors, and not a uniform, statewide policy, their claims and the Supervisors' defenses will turn on county-specific facts, and are not susceptible of classwide proof that will resolve at once the claims against all class members. Plaintiffs have not established that their challenges to the local decisions of local officials satisfy commonality or typicality.

Third, Plaintiffs have not shown that Supervisor Barton will defend this case vigorously. Two years ago, Supervisor Barton agreed to provide the relief requested by Plaintiffs. She believes the law requires it. She has also declared that she will not actively defend this case, and Plaintiffs offer no reason to doubt that representation. Because she agrees with Plaintiffs that section 4(e) compels the relief that Plaintiffs seek, Supervisor Barton is not an adequate representative of class members who do not.

Fourth, Plaintiffs have not established compliance with Rule 23(b). This is not a case in which the party opposed to the class—here, Plaintiffs—would be unable to

act consistently with different judgments entered in separate actions, or in which the resolution of Plaintiffs' claims through separate actions would impair the ability of class members to protect their interests. And Rule 23(b)(2) does not apply because the plain language of that provision does not permit certification of a defendant class, and because the single, indivisible injunction that Rule 23(b)(2) contemplates cannot properly respond to the differing, county-specific practices that Plaintiffs challenge.[2]

## LEGAL STANDARD

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores*, *Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A plaintiff must "affirmatively demonstrate" compliance with Rule 23, *id.*, and class certification is appropriate only if a "rigorous analysis" confirms that Rule 23's prerequisites have been satisfied, *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). At the class-certification stage, a court may not accept the movant's allegations as true, or resolve doubts in the movant's favor. *Brown v. Electrolux Home Prods.*, *Inc.*, 817 F.3d 1225, 1233–34 (11th Cir. 2016).

---

[2] Although *Jacobson v. Florida Secretary of State*, 957 F.3d 1193 (11th Cir. 2020), *vacated and superseded*, No. 19-14552, 2020 WL 5289377 (11th Cir. Sept. 3, 2020), compelled the Secretary of State's dismissal and prompted this second look at Plaintiffs' motion to certify a *defendant* class, it did not disturb the grounds on which this Court denied Plaintiffs' motion to certify a *plaintiff* class. Certification of a plaintiff class remains unnecessary for precisely the reasons outlined in *Madera v. Lee*, No. 1:18-cv-152-MW/GRJ, 2019 WL 1054671, at *1 (N.D. Fla. Mar. 5, 2019).

<u>ARGUMENT</u>

I.  <u>PLAINTIFFS CANNOT ESTABLISH NUMEROSITY</u>.

The proposed class is not so numerous that joinder is impracticable.[3] As public officials, the 31 Supervisors can easily be located and served. In fact, this Court only recently conducted consolidated litigation in which 67 Supervisors and 67 county canvassing boards were joined as defendants. Plaintiffs have not shown, therefore, and cannot show that the joinder of 31 additional Supervisors is at all impracticable.

Under Rule 23(a)(1), a class must be "so numerous that joinder of all members is impracticable." "The proper focus is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant considerations." *Phillips v. Joint Legislative Comm. on Performance & Expenditure Review of State of Miss.*, 637 F.2d 1014, 1022 (5th Cir. Unit A Feb. 23, 1981). In assessing whether joinder is practicable, courts consider the number and dispersion of class members, the ease of ascertaining the class members and their addresses, and the facility of serving them if joined. *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986). Whether a class is so numerous that joinder is impracticable depends "on the facts of each case." *Garcia v. Gloor*, 618 F.2d 265,

---

[3] Whether the class is so numerous that joinder is impracticable is a different question from whether joinder is permissible. The Supervisors who present this brief reserve the right to argue that Rule 20(a)(2) does not permit their joinder in a single action.

267 (5th Cir. 1980); *accord Crawford v. W. Elec. Co.*, 614 F.2d 1300, 1305 (5th Cir. 1980) (declining to hold as a matter of law that joinder of 34 parties is impracticable).

Thus, in *Crawford*, the court affirmed the district court's refusal to certify a class of 34 members, which included 15 named plaintiffs. 614 F.2d at 1305. In *Garcia*, the court affirmed the denial of class certification where the proposed class consisted of 31 members whose names and addresses were "readily ascertainable," and who resided in a compact area. 618 F.2d at 267. In *Kilgo*, the court affirmed certification of a class that consisted of 31 members who resided in three States *plus* an unknown number of additional, unidentified class members. 789 F.2d at 878 & n.30.[4] And in *CBS Inc. v. Smith*, 681 F. Supp. 794 (S.D. Fla. 1988), the certified class consisted of 67 Supervisors—more than *double* the size of the class proposed here.

The joinder of 31 local officials is not, therefore, impracticable, and Plaintiffs present no evidence that it is. Plaintiffs do not contend that the names and addresses of the Supervisors are unknown, or that the Supervisors are difficult to serve. Instead, they argue that, as defendants, the Supervisors would be forced to travel and litigate individually. ECF No. 5 at 15–16. But Rule 23(a)(1) asks whether the class members are too numerous to be joined—not whether joinder would impose on class members the usual burdens of litigation. Otherwise, Rule 23(a)(1) would always be satisfied.

---

[4] Plaintiffs' mistaken assertion that the class in *Kilgo* consisted of 31 members overlooks the unidentified members of the proposed class. ECF No. 5 at 15; *see* 789 F.2d at 878.

Recent election litigation conducted by this Court proves the practicability of joinder. All 67 Supervisors and all 67 county canvassing boards were defendants in both *Dream Defenders v. DeSantis*, No. 1:20-cv-00067-RH-GRJ (N.D. Fla. filed Mar. 13, 2020), and *Nielsen v. DeSantis*, No. 4:20-cv-00236-RH-MJF (N.D. Fla. filed May 4, 2020)—two elections cases recently consolidated and prosecuted on an expedited basis. Joinder presented no challenges, as most or all defendants willingly waived service, and the proceedings were conducted in a smooth and orderly way.

Plaintiffs here would join 31 defendants, not 134. If the joinder of 134 parties was practicable in *Dream Defenders* and *Nielsen* (which it was), then the joinder of 31 defendants is practicable here. Plaintiffs' uncorroborated assertion that joinder is impracticable is woefully insufficient to satisfy their evidentiary burden or to survive the "rigorous analysis" that must precede class certification. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). And given the due-process considerations implicit in the certification of a defendant class, any doubt should be resolved against class certification. *See New York by Abrams v. Anheuser-Busch, Inc.*, 117 F.R.D. 349, 351 (E.D.N.Y. 1987) ("We are particularly hesitant to certify a defendant class, where joinder appears practicable, due to the additional manageability and due process concerns raised by certification of such classes . . . ."). As the Former Fifth Circuit stated, the "raison d'être of the class suit doctrine is necessity," *Garcia*, 618 F.2d at 267, and no class should be certified unless Plaintiffs establish its necessity. Because

Plaintiffs have not established that the proposed class is so numerous that the joinder of 32 Supervisors would be impracticable, the Court should deny Plaintiffs' motion.

## II. BECAUSE THEY CHALLENGE LOCAL PRACTICES THAT DIFFER FROM COUNTY TO COUNTY, PLAINTIFFS HAVE NOT ESTABLISHED COMMONALITY AND TYPICALITY.

Plaintiffs do not challenge a state law that the Supervisors enforce uniformly throughout the State, but rather local practices that differ from county to county. No statewide policy regulates language-assistance services such as the maintenance of Spanish-language hotlines and websites, the recruitment of bilingual poll workers, the dissemination of Spanish-language informational materials, or the translation of social-media posts.[5] Plaintiffs cannot, therefore, establish their claims in one stroke, but instead must establish each Supervisor's liability separately with county-specific evidence. Because Plaintiffs' claims are not susceptible of classwide resolution, and because proof of the class representative's liability will not establish the liability of other class members, Plaintiffs have not demonstrated commonality or typicality.

Not all common questions will satisfy commonality. *Wal-Mart Stores*, *Inc. v. Dukes*, 564 U.S. 338, 350 (2011). After all, any competently drafted complaint can raise common questions in droves. *Id*. at 349–50. For example, the generic liability

---

[5] Of course, the State has adopted rules that require Spanish-language ballots and polling-place materials. Fla. Admin. Code R. 1S-2.032, 1S-2.034. Plaintiffs do not challenge the new rules—as far as they go. And to the extent Plaintiffs challenge matters that exceed the scope of the rules, they challenge county-level decisions and practices.

question—here, whether the defendants violated section 4(e)—is always at hand, but is never sufficient. *Id*. A common question is sufficient only if it generates common *answers*—and not any common answers, but answers that will "drive the resolution" of the litigation. *Id*. at 350. The claims at issue must hinge on a common contention capable of classwide adjudication, the determination of which will at once resolve an issue "central to the validity" of the classwide claim. *Id*. Critically, dissimilarities among class members can impede the search for common answers. *Id*. at 350, 359.

Similarly, the typicality inquiry asks whether the class representative's claims or defenses have the same essential characteristics as those of other class members. *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985). The class representative's claims or defenses are typical if proof of those claims or defenses would establish the claims or defenses of the unnamed class members as well. *Brooks v. S. Bell Tel. & Tel. Co.*, 133 F.R.D. 54, 58 (S.D. Fla. 1990). Thus, in *Colomar v. Mercy Hospital, Inc.*, 242 F.R.D. 671, 677 (S.D. Fla. 2007), the plaintiff sought to represent a class of patients in a challenge to the reasonableness of a hospital's rates. Because the reasonableness of the rates differed over time and across patients and services, the plaintiff failed to show that proof of her claims would also prove the claims of class members.

Plaintiffs here do not challenge a single, uniform, statewide policy, but rather the differing, county-level decisions and practices of each Supervisor under widely

9

divergent circumstances. No state statute dictates whether Supervisors will maintain a Spanish-language website, or recruit Spanish-speaking poll workers, or maintain a Spanish-language hotline. Accordingly, Plaintiffs cannot rely on classwide proof, as in a facial challenge to a statewide policy, but instead must prove each Supervisor's liability through county-specific evidence of local practices and the county's unique circumstances. The evidence that Plaintiffs present to establish their claims against one Supervisor will not establish their claims against another Supervisor, who might have adopted different practices under different circumstances. To prove their case, therefore, Plaintiffs must present 32 different cases—one against each of Supervisor.

The lawfulness of each Supervisor's county-level practices might depend on local circumstances, such as the number of voters in the county who were educated in schools in which the predominant classroom language was not English—and who are therefore covered by section 4(e)—and their English-language proficiency. Facts such as these differ from county to county and are insusceptible of classwide proof. The language-assistance services that suffice in a small county with a single covered individual might be insufficient in a county with large populations of covered voters.

For similar reasons, the evidence that Plaintiffs offer to prove that Supervisor Barton, the class representative, violated section 4(e) will have no tendency to show that other class members violated section 4(e). One county's violation will not prove another's. And conversely, Supervisor Barton's defense of her own office's practices

10

will have no tendency to exonerate other Supervisors. To defend 31 unnamed class members, Supervisor Barton would be required to present evidence of local practices in 31 counties of which she has no knowledge, in which she has no legal authority or any other official role under the Florida Constitution or the Florida Election Code. She would be constrained to present county-by-county defenses separately on behalf of each unnamed class member to demonstrate each Supervisor's compliance with section 4(e). Plaintiffs seek to present 32 different challenges in the absence of the very Supervisors who possess the county-specific knowledge necessary to a defense.

Plaintiffs' own declarations illustrate the variations in practices among the 32 Supervisors. In support of their motion for a preliminary injunction, Plaintiffs filed the declarations of two legal assistants who, through internet research and telephone calls, investigated some of the practices of the 32 Supervisors. ECF Nos. 2-3, 2-4. Their declarations reveal that the challenged practices differ from one county to the next:

- Some Supervisors provided information in Spanish on their websites or in voter guides about bilingual election personnel, or about the option to bring someone to assist a voter, while others did not;

- Some Supervisors provided Spanish-language voter guides on their websites, while others did not;

- Some Supervisors provided trained, bilingual poll workers throughout their counties, while others did not;

- Some Supervisors had a policy of providing trained, bilingual poll workers throughout their county, while others did not; and

- Some Supervisors provided Spanish-language absentee ballots and information, provisional ballot information, or translations of important election information on their websites, while others did not.

ECF No. 2-3 ¶ 5; ECF No. 2-4 ¶ 5. The declarations separately describe the practices of each county—one county at a time. ECF No. 2-3 ¶¶ 8–30; ECF No. 2-4 ¶¶ 8–18. The declarations submitted by the Supervisors themselves illustrate in even greater detail the variations in language-assistance services provided from county to county as local election officials apply their expertise to serve vastly different electorates in a State as demographically diverse as Florida. *See* ECF No. 41-1, 42-2, 43-1, 43-2.

Because the liability of each class member depends on county-specific facts, Plaintiffs' claims cannot be "proved on a classwide basis," *Wal-Mart*, 564 U.S. at 356, and do not present a common contention "capable of classwide resolution," the determination of which will "drive the resolution of the litigation" and "resolve an issue that is central to the validity of each one of the claims in one stroke," *id*. at 350.

In *Wal-Mart*, the Court found no commonality among the sex-discrimination claims of company employees. Each employment decision was made locally in the discretion of a store manager, and not pursuant to a general, companywide policy. *Id*. at 343. In effect, the plaintiffs sought to litigate "literally millions of employment decisions at once." *Id*. at 352. Finding no "glue" holding together the reasons for the challenged employment decisions, *id*., the Court held that dissimilarities within the class frustrated the search for a question capable of classwide resolution, *id*. at 359.

Without "convincing proof of a companywide discriminatory pay and promotion policy," the plaintiffs had not demonstrated the existence of a common question. *Id.*

Like the employment decisions in *Wal-Mart*, the decisions challenged here were made separately in 32 different counties—not pursuant to a statewide policy. There is therefore no "glue" that unites the claims against all class members, and no common contention that classwide proof can resolve on a classwide basis. Plaintiffs produce no evidence of commonality, ECF No. 5 at 16–18, and their declarations and those of the Supervisors establish that resolution of Plaintiffs' claims requires county-specific showings of county-specific facts, ECF Nos. 2-3, 2-4, 41-1, 42-2, 43-1, 43-2.

For similar reasons, Plaintiffs cannot demonstrate typicality. Here, proof that Supervisor Barton has violated (or not violated) section 4(e) cannot prove that the other Supervisors have violated (or not violated) section 4(e). The claim against each Supervisor—and each Supervisor's defense—hinges on facts peculiar to the county. No evidentiary shortcuts enable the liability of class members to be deduced from evidence probative of Supervisor Barton's liability. Supervisor Barton's defenses, therefore, are not typical of the defenses of the class. *See DWFII Corp. v. State Farm Mut. Auto. Ins. Co.*, 271 F.R.D. 676, 687–88 (S.D. Fla. 2010) (finding no typicality in a challenge to an insurance company's limits on reimbursement because each class member would be required to prove its own entitlement to reimbursement, so

that proof of the class representatives' claims would not prove the unnamed class members' claims); *Pop's Pancakes*, *Inc. v. NuCO2*, *Inc.,* 251 F.R.D. 677, 682–83 (S.D. Fla. 2008) (finding that plaintiffs, who challenged tax invoices as deceptive, could not show typicality where different disclosures were made to different class members, so that proof of one claim would not establish the class members' claims).

In *Monaco v. Stone*, 187 F.R.D. 50 (E.D.N.Y. 1999), the plaintiff alleged that county sheriffs failed to promptly transport incompetent criminal defendants from local jails to psychiatric institutions. The court refused to certify a defendant class of sheriffs, explaining that, because the plaintiffs did not challenge a state statute on its face, but rather the time that each sheriff took to transport incompetent criminal defendants, the class representative's defenses would likely differ from the defenses of other class members. *Id*. at 67 (noting that "the defenses of the class members can be expected to focus primarily on each sheriff's ability to transport such defendants more quickly"). The plaintiff, therefore, had not proven commonality or typicality.

By contrast, each of the four cases cited in this Court's recent order presented a facial challenge to a state statute that established a uniform rule of conduct for local officials to follow. ECF No. 172 at 2. *CBS Inc. v. Smith*, 681 F. Supp. 794 (S.D. Fla. 1988), for example, presented a facial challenge to a state statute that prohibited exit polling outside of polling locations on election day. None of the four cases concerned county-level decisions or practices of local election officials. The questions of law

14

presented in those cases were therefore susceptible of classwide resolution, and the defenses of the class representatives were identical to those of the class members.[6]

As in *Monaco*, Plaintiffs contest local practices—not a statewide policy. The nature of the efforts that each Supervisor has made to recruit Spanish-speaking poll workers, offer a Spanish-language hotline, and circulate Spanish-language election materials—and the sufficiency of those efforts in light of each county's unique, local circumstances—presents a county-specific inquiry. Like the allegation in *Monaco*, the allegation that the Supervisors have breached their obligations to voters covered by section 4(e) depends on each county's facts. Plaintiffs present no evidence to the contrary, and therefore have not established the propriety of class certification. *See Wal-Mart*, 564 U.S. at 350 ("Rule 23 does not set forth a mere pleading standard.").

## III. BECAUSE SUPERVISOR BARTON WILL NOT ACTIVELY DEFEND THIS CASE, PLAINTIFFS HAVE NOT ESTABLISHED THE ADEQUACY OF REPRESENTATION.

Supervisor Barton, whom Plaintiffs selected to represent the defendant class, has informed the Court that she does not intend actively to defend this case. She has agreed to provide the relief that Plaintiffs seek, and believes the law requires her to do so. Clearly, then, Supervisor Barton cannot be expected vigorously to defend this case, and is not an adequate representative of the interests of other class members.

---

[6] In each case, moreover, the defendant class consisted of at least 67 members; in *National Broadcast Co. v. Cleland*, 697 F. Supp. 1204 (N.D. Ga. 1988), the class consisted of 159 members.

As a prerequisite to class certification, a court must consider whether the class representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement exists to "protect the legal rights of absent class members" who will be bound by the judgment. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987). Because the adequacy requirement implicates basic fairness, a court must perform a "stringent" examination to assure compliance with Rule 23(a)(4). *Shroder v. Suburban Coastal Corp.*, 729 F.2d 1371, 1374 (11th Cir. 1984). The adequacy requirement is "especially important for a defendant class action where due process risks are magnified." *Bell v. Brockett*, 922 F.3d 502, 511 (4th Cir. 2019). The question here is whether the class representative "has common interests with unnamed class members and will vigorously prosecute the interests of the class through qualified counsel." *Piazza v. Ebsco Indus., Inc.*, 276 F.3d 1341, 1346 (11th Cir. 2001).

Supervisor Barton has agreed to provide the relief that Plaintiffs seek and has flatly stated that she "does not intend to actively defend this matter." ECF No. 70 ¶¶ 3, 7. In fact, Supervisor Barton agrees with Plaintiffs that the law compels her to provide Spanish-language materials. *Id.* ¶ 4; *accord* ECF No. 171 at 8 (reaffirming these arguments). Supervisor Barton has also detailed the many steps she has taken and will take to furnish the relief that Plaintiffs seek. ECF No. 41-1 ¶¶ 9–12. Having agreed that the law compels the requested relief, and having agreed to provide that

relief, Supervisor Barton can hardly be expected to "put up a real fight." *Dolgow v. Anderson*, 43 F.R.D. 472, 494 (E.D.N.Y. 1968), *quoted in Kirkpatrick*, 827 F.2d at 726. Plaintiffs offer no evidence to support their assertions that Supervisor Barton—whom *Plaintiffs* selected to represent the class—will nevertheless present a vigorous defense.

This case is comparable to *Lyons v. Georgia-Pacific Corporation Salaried Employees Retirement Plan*, 221 F.3d 1235 (11th Cir. 2000). There, the plaintiff sought to represent a class of ERISA plan participants who had received lump-sum distributions from a pension plan. *Id*. at 1253. The plaintiff received his distribution before Congress amended ERISA's payout provision. *Id*. The court concluded that, although he was an adequate representative of plan participants who had received their distributions before the statute was amended, the plaintiff had no interest in the proper interpretation of the amended statute, and was not an adequate representative of plan participants who received post-amendment distributions. *Id*. The plaintiff could not be expected to assert with "forthrightness and vigor" interests that he did not share, and in which he had no stake. *Id*. (quoting *Kirkpatrick*, 827 F.2d at 726). "Indifference," the court noted, "can undermine the adequacy of representation." *Id*.

As in *Lyons*, Supervisor Barton has no incentive to defend this litigation or to oppose Plaintiff's interpretation of section 4(e). She has provided or will provide the relief that Plaintiffs seek, and believes (as Plaintiffs do) that the law requires her to

do so. Supervisor Barton cannot be expected to assert with forthrightness and vigor the interests of class members who disagree with Plaintiffs' reading of section 4(e).

Plaintiffs cite *CBS Inc. v. Smith*, 681 F. Supp. 794 (S.D. Fla. 1988), in which a Supervisor was appointed as the representative of a defendant class of Supervisors. But *CBS* is distinguishable. In *CBS*, the plaintiffs sought an injunction prohibiting enforcement of a state statute that prohibited exit polling outside of polling locations. All Supervisors were bound to enforce the same statute, and the class representative had specifically testified that he *would* enforce it. *Id*. at 801 ("Leahy testified that he intends to enforce the prohibitions . . . ."). Because the defendant possessed the same authority and obligation as all other Supervisors to enforce the challenged law, the court found that the defendant was an adequate representative of the class. *Id*. at 802.

*CBS* does not support Plaintiffs' assumption that, because all Supervisors are similarly empowered to administer state election laws, any Supervisor is an adequate representative of a class of Supervisors. In contrast to *CBS*, Plaintiffs here challenge the local decisions and practices of 32 Supervisors—not a statewide policy that all Supervisors are duty-bound to enforce—and the proposed class representative has declared that she does not oppose the requested relief and therefore will not actively defend this case. These circumstances provide no assurance of a tenacious defense and cannot satisfy the "stringent" examination that fundamental fairness to unnamed class members demands. *See Shroder*, 729 F.2d at 1374. Because Plaintiffs have not

carried their burden to establish adequacy, the Court should deny class certification.

IV.   **PLAINTIFFS HAVE NOT SATISFIED RULE 23(B)(1) OR (B)(2).**

    A.    **Because Inconsistent Outcomes Would Not Force Any Plaintiff Into Incompatible Acts, Rule 23(b)(1)(A) Does Not Support Class Certification.**

Class certification is sometimes necessary because the party opposed to the class has no option but to treat all class members alike, and would be practically or legally unable to act consistently with different judgments entered in separate actions against different class members. Not so here. No legal or practical imperatives force Plaintiffs to treat all Supervisors alike. If separate actions were filed, then, although Plaintiffs might win some cases and lose others, nothing would prevent them from conforming their conduct to each judgment. Thus, Rule 23(b)(1)(A) does not apply.

Rule 23(b)(1)(A) permits class treatment where separate actions might result in differing adjudications that establish "incompatible standards of conduct for the party opposing the class"—here, for Plaintiffs. It requires more than the possibility of differing adjudications; that possibility is ever-present when separate actions are pursued. *In re Integra Realty Res*., *Inc*., 354 F.3d 1246, 1263–64 (10th Cir. 2004); *Fifth Moorings Condo*., *Inc. v. Shere*, 81 F.R.D. 712, 718 (S.D. Fla. 1979). Standards of conduct are "incompatible" when, because a legal or practical necessity compels a party to treat class members alike, the party cannot act consistently with separate, inconsistent judgments. *Amchem Prod*., *Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

For example, if separate actions were brought to challenge a bond issuance, then the defendant, in the case of inconsistent outcomes, would be unable to fulfill its duty to treat all bondholders alike. Fed. R. Civ. P. 23 committee notes. A riparian owner cannot conform her conduct to inconsistent judgments obtained by downriver owners. *Id*. And a property owner cannot both abate and not abate an alleged public nuisance on his property, in accordance with differing judgments secured in separate actions. *Id*. In each of these cases, differing judgments create an "actual or virtual dilemma" because they operate differently and incompatibly on the same, indivisible act. *Id*. By contrast, separate actions for money damages do not create incompatible standards because, although the outcomes might differ, the defendant can conform its conduct to each judgment by paying some plaintiffs but not the others. *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1195 (11th Cir. 2009); *McDonnell-Douglas Corp. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 523 F.2d 1083, 1086 (9th Cir. 1975).

Plaintiffs here would not face incompatible standards if separate actions were filed against class members. Some counties might be required to provide language assistance and others might not, but the inconsistent outcomes would not force any Plaintiff "into the inescapable legal quagmire of not being able to comply with one such judgment without violating the terms of another." *Jones v. Am. Gen. Life & Accident Ins. Co.*, 213 F.R.D. 689, 697 (S.D. Ga. 2002) (quoting *McBirney v. Autrey*, 106 F.R.D. 240, 245 (N.D. Tex. 1985)). The judgments would not compel Plaintiffs

to "pursue two different courses of conduct" that they "cannot as a practical matter pursue." *Green v. Occidental Petroleum Corp.*, 541 F.2d 1335, 1340 n.10 (9th Cir. 1976). While the judgments might be inconsistent, they would not be *incompatible*.

Even before this litigation, some counties conducted bilingual elections, while others did not. For example, thirteen counties in Florida conduct bilingual elections under section 203 of the Voting Rights Act, which Congress applied to a limited number of jurisdictions. Voting Rights Act Amendments of 2006, Determinations Under Section 203, 81 Fed. Reg. 87,532, 87,534–35 (Dec. 5, 2016). And even after this litigation, some counties will conduct bilingual elections, while others will not. Plaintiffs, after all, have included only 32 of 67 Supervisors in their proposed class. Intercounty differences in language-assistance services have never forced Plaintiffs into incompatible acts, nor would they if separate actions yielded different outcomes.

Plaintiffs argue that inconsistent adjudications would subject different voters to different standards "depending upon the county in which they reside." ECF No. 5 at 21. But the possibility that inconsistent outcomes might have different effects on different *non-parties* does not begin to show compliance with Rule 23(b)(1)(A). The rule applies where a *party* not only faces inconsistent outcomes, but also cannot, for legal or practical reasons, act in accordance with those outcomes. *Clemons v. Norton Healthcare Inc. Ret. Plan*, 890 F.3d 254, 280 (6th Cir. 2018) (finding certification under Rule 23(b)(1)(A) appropriate in an ERISA action against a plan administrator

because ERISA requires administrators to treat all class-member beneficiaries alike).

Plaintiffs have not shown that they would be unable to act in accordance with different judgments entered with respect to different counties. Ms. Rivera votes in Alachua County only, and Plaintiffs do not contend that the organizational Plaintiffs would be unable to conform their conduct to different practices in different counties, just as they do now. And Plaintiffs' argument that different standards in different counties would raise equal-protection concerns is not only mistaken, *see infra* Part IV.B., but also irrelevant. Rule 23(b)(1)(A) asks whether inconsistent adjudications would impose incompatible standards of conduct on a party opposed to the class—not whether they would generate constitutional questions. Because Plaintiffs have not made the relevant showing, Rule 23(b)(1)(A) does not support class certification.

### B. Because an Action Against One Supervisor Would Not Impair the Interests of Other Supervisors, Rule 23(b)(1)(B) Does Not Support Class Certification.

Rule 23(b)(1)(B) protects class members where, if separate actions were filed, a decision as to one or more class members might dispose of the interests of other class members, or impair their ability to protect their interests. For example, where all class members seek to recover from a limited fund, decisions in favor of some class members might exhaust the fund before all class members have been fully compensated. Here, separate actions against some Supervisors would not impair the ability of the other Supervisors to protect their interests. Apart from the stare-decisis

effect of the earlier decisions, each Supervisor would remain perfectly free to litigate the merits of the dispute. Rule 23(b)(1)(B) does not support class certification here.

Rule 23(b)(1)(B) speaks from the vantage point of the class and asks whether an action to which fewer than all class members are parties would, either legally or practically, conclude the interests of other class members, or substantially impair or impede their ability to protect their interests. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833 (1999). Such prejudice to the interests of class members can occur where the rights claimed or the relief awarded is of a "shared character." *Id*. at 833–34. For example, an action by one shareholder to compel a corporation to declare a dividend would necessarily determine the interests of other shareholders. *Id*. By contrast, the fact that an action against one class member might have precedential impacts on future actions involving other class members does not warrant class certification under Rule 23(b)(1)(B). *In re Dennis Greenman Sec. Litig.*, 829 F.2d 1539, 1546 (11th Cir. 1987). If it did, then class certification would be available in all cases. *Id*.

The adjudication of a section 4(e) claim against one Supervisor would in no way conclude the interests of other Supervisors, or impair or impede their ability to protect their interests. At most, it would have a precedential impact, which, without more, does not justify class treatment. Apart from its stare-decisis effect, a decision adverse to one Supervisor would leave other Supervisors free to litigate section 4(e) claims.

Plaintiffs maintain that, once a court decides a section 4(e) claim against one Supervisor, equal protection will force all other Supervisors, though non-parties, to abide by the same judgment. ECF No. 5 at 22. Plaintiffs cite no case, however, that even remotely supports their argument. None of the cases that Plaintiffs cite ascribes such res-judicata-like effects to the Equal Protection Clause. And none suggests that, once one Supervisor conducts bilingual elections, equal protection compels all other Supervisors to do the same. Tellingly, although some Supervisors already conduct bilingual elections, Plaintiffs have not asserted an equal-protection claim in this case.

Equal protection applies where one government actor treats similarly situated people differently, but not where different government actors treat similarly situated people differently. Just as equal protection does not require one State to assimilate its laws to those of other States, it does not require one county official to assimilate her local practices to those of her counterpart in another county. *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972) (explaining that equal protection guarantees the right "to participate in elections on an equal basis with other citizens in the jurisdiction"); *Citizen Center v. Gessler*, 770 F.2d 900, 917–18 (10th Cir. 2014) (affirming the dismissal of an equal-protection claim against county election officials because the plaintiffs alleged "inter-county disparities" rather than the differential treatment of voters within a county). Thus, in *Bush v. Gore*, 531 U.S. 98, 109 (2000), the Court made clear that its concern was not "whether local entities, in the exercise of their

24

expertise, may develop different systems for implementing elections," but whether a state court must assure basic fairness and equal treatment when it orders a *statewide* remedy. *See also Wexler v. Anderson*, 452 F.3d 1226, 1233 (11th Cir. 2006) (noting that equal protection does not require uniformity in voting systems across the State).

Of course, if Plaintiffs' equal-protection theory were correct, and a judgment against one Supervisor would force all other Supervisors to comply, with or without class certification, then class certification would be unnecessary and inappropriate. *Madera v. Lee*, No. 1:18-cv-152-MW/GRJ, 2019 WL 1054671, at *1 (N.D. Fla. Mar. 5, 2019) (explaining that class certification is inappropriate when, even without class certification, "all relief would inure to similarly situated persons" (internal marks omitted)). Plaintiffs are wrong, however. A judgment against one Supervisor would not deprive other Supervisors of their opportunity fully to litigate section 4(e) claims in separate actions. Rule 23(b)(1)(B) does not, therefore, support certification of the proposed class.

## C.   Rule 23(b)(2) Does Not Support Class Certification.

### 1.   Rule 23(b)(2) Does Not Support Certification of Defendant Classes.

Rule 23(b)(2) does not support certification of defendant classes. The plain language of the rule applies only where the acts or omissions of a party opposed to the class warrant classwide relief. The acts or omissions of *plaintiffs* do not warrant relief against defendant class members. Because it does not apply to the certification

of defendant classes, Rule 23(b)(2) does not authorize the defendant class proposed here.

Rule 23(b)(2) authorizes class certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." This rule focuses on the acts or omissions of "the party opposing the class" and asks whether those acts or omissions render classwide equitable relief "appropriate." Since the acts or omissions of a *plaintiff* would never make classwide equitable relief appropriate, Rule 23(b)(2) has no application to a class of defendants.

The First, Fourth, Sixth, and Seventh Circuits have all concluded that the plain language of Rule 23(b)(2) leaves no room for defendant classes. *Tilley v. TJX Cos*., *Inc*., 345 F.3d 34, 39–40 (1st Cir. 2003); *Henson v. E. Lincoln Twp.*, 814 F.2d 410, 413–14 (7th Cir. 1987); *Thompson v. Bd. of Educ. of Romeo Cmty. Sch.*, 709 F.2d 1200, 1204–05 (6th Cir. 1983); *Paxman v. Campbell*, 612 F.2d 848, 854 (4th Cir. 1980) (en banc), *disapproved on other grounds*, *Owen v. City of Independence*, *Mo*., 445 U.S. 622 (1980). The Supreme Court's observation that "Rule 23(b)(2) applies only when a single . . . judgment would provide relief to each member of the class" confirms that the rule contemplates only plaintiff classes. *Wal-Mart*, 564 U.S. at 360.

The Second Circuit reached a different conclusion in *Marcera v. Chinlund*, 595 F.2d 1231, 1238 (2d Cir.), *vacated on other grounds*, 442 U.S. 915 (1979),

26

stating without analysis that the availability of defendant classes under Rule 23(b)(2) is "now settled." *Marcera*'s unpersuasive reliance on multiple authorities that do not support its conclusion has been heavily criticized. *See*, *e.g.*, *Tilley*, 345 F.3d at 40; *Henson*, 814 F.2d at 413. The Former Fifth Circuit gave *Marcera* short shrift when, citing the Fourth Circuit's decision in *Paxman*, it noted in dicta that Rule 23(b)(2)'s "literal language . . . indicates that it is not an appropriate basis for the certification of a defendant class." *Greenhouse v. Greco*, 617 F.2d 408, 413 n.6 (5th Cir. 1980).

Even *Marcera* appeared to confine the availability of defendant (b)(2) classes to (i) facial challenges to state laws; and (ii) challenges to policies that are *uniform* across local jurisdictions. In *Marcera*, the plaintiffs challenged the refusal of county sheriffs to permit pretrial detainees to receive contact visits. The court noted that the challenged practice was "identical" in each county and "could not [have been] more [identical] were [the sheriffs] acting pursuant to a statute." 595 F.2d at 1238 n.10; *see also Greenhouse*, 617 F.2d at 413 n.6 (noting that courts had certified defendant (b)(2) classes in facial challenges to "locally administered state statute[s] or similar administrative policies"). Other courts have noted the possible exception for uniform policies but have stopped short of recognizing it. *E.g.*, *Thompson*, 709 F.2d at 1204.

Like the First, Fourth, Sixth, and Seventh Circuits, this Court should conclude that Rule 23(b)(2) does not authorize certification of a defendant class. The language of the rule is plain. It applies only where the acts or omissions of the party opposed

to the class are grounds for classwide equitable relief. And because the language of the rule is clear and unambiguous, the Court should decline to recognize *Marcera*'s local-official exception. But even if the exception exists, it would not apply here. Plaintiffs do not challenge a state statute or a uniform practice. Rather, the practices that Plaintiffs challenge differ from county to county. *See supra* Part II. This case is therefore unlike *Marcera* and instead resembles *Paxman* and *Thompson*, where the plaintiffs challenged county-level maternity-leave policies, *Thompson*, 709 F.2d at 1204; *Paxman*, 612 F.2d at 851–52, and *Henson*, where the plaintiffs claimed that local welfare agencies had adopted inadequate policies to implement the due-process rights of applicants, 814 F.2d at 411–12. Because Plaintiffs do not contend that their own acts or omissions render classwide equitable relief appropriate, Rule 23(b)(2) does not apply.

### 2. Properly Tailored Injunctive Relief Will Not Be Uniform Across All 32 Counties.

Rule 23(b)(2) cannot support class certification for a second reason: the rule applies only where a single, indivisible remedy would provide final classwide relief, and here, a one-size-fits-all injunction would be inappropriate in light of the differing local practices that Plaintiffs challenge. Because the remedy would differ among the counties, Plaintiffs have not shown the propriety of certification under Rule 23(b)(2).

"Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide final relief." *Wal-Mart*, 564 U.S. at 360. Indeed, the "key to the (b)(2)

28

class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct . . . can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Id.* (internal marks omitted). An essential difference between (b)(2) and (b)(3) classes—and the reason that notice and opt-out rights are inapplicable to the former—is that case-specific inquiry is irrelevant to an indivisible injunction that provides final relief across the entire class. *Id.* at 362–63.

The one-size-fits-all remedy that Rule 23(b)(2) demands would be unavailable here, however. Injunctive relief must be narrowly tailored to the specific violations identified by the Court and must be no broader than necessary to protect the interests of the injured parties. *Keener v. Convergys Corp.*, 342 F.3d 1264, 1269 (11th Cir. 2003); *accord Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (explaining that "the scope of injunctive relief is dictated by the extent of the violation"). Thus, a uniform injunction against all class members would be inappropriate if some class members are found to be compliant with section 4(e). Similarly, a generalized injunction that glosses over material differences in local practices and orders the same relief in all counties might be insufficient in some counties and overly broad in others. It might order steps that would be impossible or unnecessary in some counties, or that some counties already take. If some counties already provide Spanish-language hotlines, for example, then an injunction that requires all class members to provide Spanish-language hotlines would not be narrowly tailored. Because the final injunction must

be tailored to the local practices and circumstances of class members, the proposed class is not sufficiently cohesive to be certified under Rule 23(b)(2). *See M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 847 (5th Cir. 2012) (concluding that certification of a (b)(2) class is inappropriate where final relief must be tailored to different class members); *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 498–99 (7th Cir. 2012) (same).

## CONCLUSION

For these reasons, the Court should decline to certify a defendant class.

Respectfully submitted,

/s/ *Kia M. Johnson*
Kia M. Johnson
Assistant County Attorney
Florida Bar Number: 124746
221 Palafox Place, Suite 430
Pensacola, Florida 32502
Phone: 850-595-4970
Fax: 850-595-4979
kmjohnson@myescambia.com
*Attorney for Amicus Curiae, the Supervisor of Elections for Escambia County*

/s/ *Andy Bardos*
Andy Bardos (FBN 822671)
GRAYROBINSON, P.A.
Post Office Box 11189
Tallahassee, Florida 32302-3189
Telephone: 850-577-9090
andy.bardos@gray-robinson.com
*Attorney for Amici Curiae, the Supervisors of Elections for Charlotte, Indian River, Lake, Manatee, Marion, Monroe, and Pasco Counties*